DANIEL P. GOTT

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 19, 1900.*

1. COUNTY BOARDS—*when special meeting is sufficiently legal to authorize calling grand jury.* A special meeting of the board of supervisors, called some nine days after the written request of at least one-third of the members addressed to the clerk, is sufficiently legal to authorize the board to call a grand jury, although notice of the meeting was published but once, where each member had notice of the meeting and all members were present.

2. NOTICES—*section 3 of act on notices construed.* Section 3 of the act entitled "Notices," providing that whenever the number of publications of a notice required by law is not specified it shall be intended that the same be published for three successive weeks, means, when applied to section 50 of the act on "Counties," concerning special meetings of the board of supervisors, that notice of such meetings shall be published such a number of times, at the rate of once a week, as the lapse of time between the date of the request for the meeting and the date of the meeting makes possible and necessary.

3. JURORS—*when overruling challenge for cause is not reversible error.* Overruling a challenge for cause is not reversible error, even though the juror is incompetent, if the peremptory challenges were not exhausted.

4. NEW TRIAL—*when separation of jury is not ground for new trial.* That the jury were allowed to separate during the trial, but before they had retired to consider their verdict, is not ground for new trial, unless it is shown that the jurors were thus exposed to some outside influence which might have operated to the prejudice of the accused.

5. INSTRUCTIONS—*instruction concerning proof beyond a reasonable doubt, upheld.* An instruction for the People is properly given which holds that the jury need not be satisfied, beyond a reasonable doubt, as to each link of the chain of circumstances relied upon as establishing the defendant's guilt, but it is sufficient if, taking the evidence altogether, they are satisfied of such guilt beyond a reasonable doubt.

WRIT OF ERROR to the Circuit Court of Wabash county; the Hon. E. D. YOUNGBLOOD, Judge, presiding.

This is an indictment, found by the grand jury of White county against the plaintiff in error, Daniel P. Gott, for the murder of his wife, Margaret Gott, on the 8th day of June, 1899, in White county. The plaintiff in error was arraigned in open court, and pleaded not guilty to the indictment. A motion was made for a change of venue from White county on account of the prejudice of the inhabitants. This motion was supported by the affidavit of the plaintiff in error. The People, by leave of court, filed cross or counter-affidavits. A change of venue was granted to Wabash county, and the sheriff of White county was ordered to carry plaintiff in error to Wabash county as required by law; and the clerk was ordered to certify a transcript of the proceedings to Wabash county, all of which was done. Thereafter, a motion was made to quash the indictment for the reason stated in the opinion of the court, but this motion was overruled by the trial court, and plaintiff in error excepted to the overruling of the same. A jury was empaneled, and a trial was had in the circuit court of Wabash county; and, on November 24, 1899, the jury retired to consider their verdict, and returned into court a verdict, finding the defendant guilty and fixing his punishment at confinement in the penitentiary for the term of his natural life. The plaintiff in error then made a motion for a new trial, and, in support of some of the reasons urged in favor of a new trial, filed a number of affidavits. The motion for a new trial was overruled; and judgment was rendered upon the verdict, and sentence was pronounced upon the plaintiff in error in accordance therewith. The present writ of error is sued out for the purpose of reviewing the judgment so rendered by the circuit court of Wabash county.

Margaret Gott, the wife of the plaintiff in error, was killed on the night of June 7, 1899, or rather on the morning of June 8, 1899, between the hours of twelve and one o'clock. She was killed by a shot from a pistol; the pistol

ball entered just above her right ear, and ranged a little down and back. Before the breath left the body of Margaret Gott, the plaintiff in error, her husband, ran out of their house partially dressed to one of the neighbors, named Raub, who lived a short distance away from them. He aroused Mr. Raub from his sleep, and stated to him that burglars had entered the house, and robbed him, and shot his wife, and, as he thought, had killed her. He requested Raub to go for Dr. Harrell, and for the city marshal, Moses Willis. The doctor was aroused, and went at once to the house. When the killing took place, no one was in the house except the plaintiff in error and his wife, unless the two burglars mentioned by him were also present in the house. Dr. Harrell found Mrs. Gott lying upon the east side of the bed next to the wall, her left foot hanging off the bed, and the right foot lying just over the edge of the bed. There was a bolster across the head of the bed. The cover was up above her right knee. She was lying a little on the left side with her left arm hanging off the bed, not exactly square on her back, but nearer on her back than her side, her head turned a little to the left; she had a pleasant expression on her face, and gasped once for breath after the doctor came in sight of her. Her gown was buttoned at the top, but pulled apart. Her head was on the edge of the bolster, and there was a powder burn or smoke on it six or eight inches from the head. One of the drawers of the dresser was on the chair, and the other was on the floor. The bottom drawer was pulled nearly out of the dresser, and papers were scattered over the floor. The plaintiff in error requested the doctor to go after Moses Willis, the city marshal, and William Hill, a deputy sheriff, but the doctor stepped across the street and rang the church bell. This brought to the house a number of people living in Norris City, where the parties resided, and where the killing occurred.

·The plaintiff in error stated to a number of persons, who came to the house that night, and also stated, in his testimony given before a police magistrate on June 20, 1899, that he was awakened in the night by a noise, which he at first supposed to be mice in the bureau drawer among his papers; that he was lying on the bed by the side of his wife; that, the noise continuing, he awoke and started to put on his pantaloons, when he saw a large man on the floor examining the papers and other articles in one of the bureau drawers; that, upon his attempting to arise, this man "covered" him with his revolver and with the light of his lantern; that he asked the man, if he wanted his money, and told him that he would give it to him; that he thereupon gave the man his purse, which, as he said, contained $60.00 or $70.00; that his wife was awakened, and had in her hands, or near her person, a purse with some $90.00 or thereabouts in it, and also a watch; that there then appeared from the adjoining room a smaller man, whose breath smelt strongly of liquor; that the smaller man approached his wife, and, upon her seeming to resist, he stated to her that she had better surrender her money to the man; that, thereupon, the large man struck him a blow and knocked him over the rocking-chair into the adjoining room through the open door of the latter; that, while he was in the adjoining room, and before he recovered himself, he heard a pistol fired; that some of the silver coin in his wife's purse fell on the floor, and was picked up by one of the men; that the men not only took his purse and his wife's purse, but also his revolver, which appears to have been lying on a chair, or in a bureau drawer; that the men then left the house, he stating at one time or to one person that they both left through the front door, and at another time and to another person that one left through the front door and the other through the back door; that, as they left, they told him upon peril of his life to keep still for five minutes; that, after they left the house, he saw them

upon the road or street in front of the house near a wood-pile or pile of posts; that they were both masked, and he did not see their faces; that the last he saw of them they were close to the pile of posts and going eastward.

Some time after the killing took place, a pistol was found upon the railroad track near the house, where the plaintiff in error lived, with the letters D. P. on it; and the testimony tended to show that this pistol belonged to the plaintiff in error. Bloodhounds were put upon the trail, or were employed to find the trail of the alleged burglars upon the morning of the killing, but they stopped or lost the trail a little way up the railroad track, not a great distance from the house. There was some testimony tending to show that two strange men, hard-looking cases, were in that neighborhood either on the day of the killing, or a day or two before the killing took place. The plaintiff in error was fifty-seven years old, and his wife was sixty-five years old. They had been married about eleven years, and had no children. The State proved, that a woman twenty-seven years old, with two children, lived in a house owned by the plaintiff in error in Norris City. Her name was Mrs. Lou Rankin. It is proven in the case, and principally if not altogether by her testimony, that a criminal intimacy had existed between the plaintiff in error and Mrs. Rankin for about two years prior to the killing of Mrs. Gott. During this time he supported Mrs. Rankin, furnishing her and her children with clothing and provisions and the house they lived in. Mrs. Rankin swears that, about a year before she testified in this case, he asked her to leave Norris City with him. Her husband, who at one time had worked for the plaintiff in error, had been separated from her for some two years, or thereabouts. She also states that, during the existence of this intimacy, he visited her almost every day. At one time he made a trip with her to Cairo, and they staid all night together in one room. He was at her house and in her company on the

evening before the killing; and was also there on the Sunday evening after the killing which, as we understand the evidence, took place on Wednesday or Thursday.

ORGAN & ASHLEY, MUNDY & PHIPPS, and S. Z. LANDES, for plaintiff in error.

E. C. AKIN, Attorney General, (GEORGE P. RAMSEY, State's Attorney, of counsel,) for the People.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—A motion was made in the court below to quash the indictment upon the alleged ground that the board of supervisors, which selected the grand jury, were not then holding a legal session. The board was met in extra session when the grand jury was selected. The reason why the extra session is said to have been illegal, is that newspaper notice of the meeting of the board was given one week only, and that three weeks' notice of such meeting was not given. Counsel for plaintiff in error contend, that it was necessary to give three weeks' notice of the extra session of the board of supervisors. Section 50 of chapter 34 of the Revised Statutes, being the act in regard to "Counties," provides that "special meetings of the board of supervisors shall be held only when requested by at least one-third of the members of the board, which request shall be in writing, addressed to the clerk of the board, and specifying the time and place of such meeting, upon reception of which the clerk shall immediately transmit notice, in writing, of such meeting to each of the members of the board. The clerk shall also cause notice of such meeting to be published in some newspaper printed in the county, if any there be." (1 Starr & Curt. Ann. Stat.—2d ed.—p. 1096). Whatever testimony there is in the record in regard to this extra session of the board of supervisors appears in the affidavit of George

T. Ashley, one of the counsel for the plaintiff in error, submitted to the court below in support of the motion to quash the indictment. This affidavit shows, that the meeting was held on July 7, 1899, and that the written request for this special meeting was filed with the clerk of the board on June 28, 1899. It is not denied, that this special meeting was requested by at least one-third of the members of the board, nor is it denied that the request was in writing, and addressed to the clerk of the board. It is furthermore conceded on the part of the plaintiff in error, that each of the members of the board had notice from the clerk of the meeting, and that all of them were present at the meeting. It is also conceded that the notice was published once. Section 4 of chapter 100 of the Revised Statutes in regard to "Notices" provides that, "when any notice is required by law,  *  *  * and it is not otherwise provided, it shall be sufficient to publish the same in a weekly newspaper." (2 Starr & Curt. Ann. Stat.—2d ed.—p. 2822). There was, then, besides the notice given to each of the members of the board, one publication of the notice in a weekly newspaper. We are of the opinion, that sufficient notice was given, and that this special meeting of the board was so far legal as to authorize the board to select the grand jury.

Counsel for the plaintiff in error say that, by the terms of section 3 of chapter 100 in regard to "Notices," "whenever notice is required by law,  *  *  *  and the number of publications is not specified, it shall be intended that the same be published for three successive weeks." (Ibid). The contention here is, that this notice was not published for three successive weeks, and, therefore, that the meeting was not properly called. Section 3 of chapter 100 can have no application to the present case. Section 50 of chapter 34 authorizes a special meeting of the board to be held when it shall be requested in writing by at least one-third of the members; and the

written request so made must specify the time and place
of the meeting. Inasmuch as at least one-third of the
members have the authority to request the meeting and,
in their request, to specify the time and place of the
meeting, they have the right to fix the time for a day
which shall be distant less than three weeks. Such was
the fact in the present case. The written request, ad-
dressed to the clerk, was made on the 28th of June, and
the meeting was fixed for July 7, and three weeks did
not intervene between the two dates. The period be-
tween the two dates in question was only a little more
than one week. It was, therefore, impossible to make
publication for three successive weeks. Section 50 only
requires the clerk to cause notice of the meeting to be
published in some newspaper printed in the county; and
this requirement, taken in connection with the preceding
portion of section 50, can have no other meaning than
that the notice is to be published such a number of times
at the rate of one time in each week, as is possible and
necessary in view of the date of the meeting as fixed in
the written request. It cannot be said that, by the terms
of section 50, the number of publications is not specified;
on the contrary, we think the meaning of section 50 is,
that the number of publications is to be such number, as
the lapse of time between the date of the request and
the date of the meeting makes necessary and possible,
the publication or publications being in a weekly news-
paper. For the reason thus stated, we are of the opinion
that the court below committed no error in overruling
the motion to quash the indictment. Under a former
statute of this State, and while section 3 of chapter 100
in regard to "Notices" was in force, this court said: "The
mode of calling a special meeting is not specified in the
act, and hence there is no means of testing the legal-
ity of the call, and any meeting of the board at which a
quorum is present must be regarded as valid." (*Town of
Ottawa* v. *LaSalle County,* 11 Ill. 654).

*Second*—It was urged in the court below, as one of the reasons why a new trial should be granted, that one of the twelve jurors, named John Friend, who tried the plaintiff in error, was, at the time of the trial, demented. In support of the claim, that the juror was demented, the affidavit of one Fay K. Waller was read upon the motion for a new trial. In his affidavit Waller swears, that, about four years prior to the time of the making of the affidavit, he, as notary public, administered an oath to Friend; that the affidavit then sworn to by Friend was made in the prosecution of a pension claim; that one of the grounds, upon which the pension was claimed, was that Friend was insane "at times;" and that he then swore, that he was insane "at times." It will be noticed that Waller swears that, four years theretofore, Friend swore that he was insane only "at times," and not always. It does not appear that the time of this trial was one of the times when he was insane. The examination of Friend, before he was accepted as a juror, is in the record, and shows him to have been an intelligent and competent juror. Counsel for plaintiff in error challenged him for cause, and the trial court overruled the challenge for cause. When Friend was examined as a juror, the challenges of plaintiff in error were not exhausted, nor were they ever exhausted, as the plaintiff in error made but five peremptory challenges, although, under the statute, he was entitled to twenty. (1 Starr & Cur. Stat.—2d ed.—p. 1403). When peremptory challenges are not exhausted, it is not reversible error, even if the juror be incompetent, to overrule a challenge for cause. In *Wilson* v. *People*, 94 Ill. 299, this court said (p. 306): "The defendant exhausted but two of his peremptory challenges, and hence, when he accepted the jurors by whom he was tried, he was entitled to eighteen peremptory challenges; and it must, therefore, be presumed the jurors by whom he was tried were entirely unobjectionable to him." (See, also, *Robinson* v. *Randall*, 82 Ill. 521).

187—17

The court below committed no error in refusing to grant a new trial for the reason thus urged upon our attention.

*Third*—Counsel for plaintiff in error assign as error, that the court below permitted the jurors to separate during the trial of the cause without the consent of plaintiff in error. It is not claimed that, if there was a separation of the jurors, it took place after the jury retired to consider their verdict; but it occurred, if at all, during the trial, and before they retired to consider their verdict. In support of the motion for new trial made in the court below four affidavits, two of them made by counsel for the prisoner, were filed in the case, alleging that, during the trial and on November 23, 1899, four of the jurors went to the barber-shop of one Charles Edmonds to be shaved, and that, upon November 24, two other jurors went to the same barber-shop to be shaved. It is shown clearly by the affidavits of the bailiffs and others that, when the jurors thus went to the barber-shop in question, they were accompanied by one or both of the bailiffs who had the jury in charge. It is not shown, that any juror was allowed to talk or to be talked to, nor is it shown that any juror saw or heard anything prejudicial to the plaintiff in error. It also appears that one of the jurors, named George Rigg, went to his home to get his overcoat, but it appears from the affidavits that he was taken by one of the bailiffs, who had the jury in charge, and that he did not go out of sight of the bailiff. The conduct of the officers in thus permitting the jurors to go where they did go is reprehensible, and cannot be approved by this court, but the affidavits setting up such separation of the jurors as is here alleged, fail to show that the jurors were exposed to any outside influence, or operated on prejudicially to the prisoner. Hence, this judgment of conviction cannot, for that cause alone, be reversed. In *Jumpertz* v. *People*, 21 Ill. 374, the facts were different from those presented by the present record; as, there, the juror complained of was separated from the bailiff, out of his

presence, sight and hearing, and indeed for a time was engaged in conversation with others. In *Russell* v. *People*, 44 Ill. 508, also, one of the jurors admitted that he conversed with another person. This record shows, that the jurors in this case were never out of the presence, sight or hearing of the bailiff in charge, and neither saw nor heard anything concerning this case; and the affidavits, filed below by plaintiff in error, allege nothing that tends to show that there was any opportunity for influencing, prejudicing or tampering with the jury.

In *Reins* v. *People*, 30 Ill. 256, this court, speaking through the late Justice BREESE, said (p. 273): "In capital cases even, where life is at stake, the separation of a jury without consent is not of itself error and ground for a new trial. Something more must be shown. It must be shown that the accused might have been prejudiced by it—that the jurors, or some one of them, might have been tampered with, or improperly influenced, or some means exerted over them, in consequence of their separating, so as to influence their verdict."

In *Miller* v. *People*, 39 Ill. 457, this court, speaking through the same learned justice, says (p. 467): "As to the misconduct of the officers in suffering individual jurors to separate from the panel after the case was committed to them, in the absence of undue influences upon them while so separate, we would not for that reason set aside a verdict otherwise proper. The officer deserves the punishment of the court, but there is no proof the prisoners have been prejudiced by his misconduct."

In *Adams* v. *People*, 47 Ill. 376, this court, speaking through the same judge, acting as the chief justice of the court, said (p. 381): "It may be, the officers in charge of the jury were not sufficiently cautious and circumspect, when they conducted the jury to the hotel for refreshments, but it does not appear from the affidavits *pro* and *con*, read on this point, the jury were influenced in the slightest degree by the casual conversation they

might have heard at the hotel, and it is not proved they heard anything prejudicial to the prisoner, or that they discussed the merits before the cause was closed; and it is not shown that the jury were at any time separate and out of the control of the officer in charge. It certainly was the duty of the officers to keep the jury, when at their meals or sleeping, entirely removed from the company of others. They should eat by themselves, and sleep with none present but the officers in charge. * * * It was indiscreet to permit them, during a meal or when in their lodging room, to be in company with others, but unless it is clearly shown they were, by such exposure, operated on in some way to the prejudice of the prisoner, we do not think a verdict, for that cause alone, should be set aside."

We are of the opinion, that no such separation of the jury is shown by the affidavits filed below, as would justify us in reversing the judgment for such cause.

*Fourth*—Counsel for plaintiff in error assign errors in regard to the giving and refusal by the court below of certain instructions. As we understand their argument, they specifically object to two only of the instructions, which were given for the prosecution. One of these is instruction, numbered 10, which told the jury that the rule, requiring them to be satisfied of the defendant's guilt beyond a reasonable doubt to warrant a conviction, "does not require that the jury should be satisfied beyond a reasonable doubt of each link in the chain of circumstances relied upon to establish the defendant's guilt; it is sufficient if, taking the evidence altogether, the jury are satisfied beyond a reasonable doubt that the defendant is guilty." This instruction was not erroneous under the decisions of this court. In *Weaver* v. *People*, 132 Ill. 536, we said (p. 542): "The rule is so well settled by repeated decisions, that the reasonable doubt, that will justify and require an acquittal, must be as to the guilt of the accused when the whole of the evidence is considered,

that citation of cases is unnecessary." In *State* v. *Hayden*, 45 Iowa, 11, the Supreme Court of Iowa held that, where the evidence is circumstantial, the jury need not be satisfied beyond a reasonable doubt of every link in the chain of circumstances necessary to establish defendant's guilt; and, in that case, the court say: "It is not a reasonable doubt of any one proposition of fact in the case which entitles to an acquittal. It is a reasonable doubt of guilt arising upon a consideration of all the evidence in the case." (See, also, *Houser* v. *State*, 58 Ga. 78; *Jarrell* v. *State*, 58 Ind. 293). The first of the refused instructions, asked by the plaintiff in error, was properly refused, because it announced the contrary of the doctrine announced in the tenth instruction given for the State.

Plaintiff in error also complains of the refusal of the trial court to give the jury an instruction, directing them to find the defendant not guilty, which instruction was asked at the close of the People's evidence, and was again asked when all the evidence on both sides was concluded. The determination of the question, whether or not the court below erred in refusing to give this instruction, depends upon a consideration of the facts of the case. The evidence in the case was circumstantial. Nothing is known of what occurred, at the time when Margaret Gott was killed, except what the plaintiff in error says about it. There were many facts and circumstances, tending to contradict his account of what took place; and there were other facts and circumstances, tending to sustain his account of it. The question, whether or not his account was truthful and correct, was a question for the jury to settle. After a careful examination of all the evidence, we cannot say that the verdict was not justified by the evidence, and, therefore, it is not our duty to disturb the finding of the jury. We think the court below committed no error in refusing to instruct the jury to find the defendant not guilty.

*Fifth*—As a part of their evidence in chief, the prosecution introduced a copy of the testimony of plaintiff in error taken before the examining magistrate. Counsel for plaintiff in error say, that the court gave a number of instructions, which permit the jury to discredit the testimony of the plaintiff in error so introduced by the People; and they claim that thereby the People put the plaintiff in error on the stand as their witness, and then sought to discredit him by the instructions of the court.

Counsel for plaintiff in error do not point out to us what particular instructions, given for the People, discredit the testimony of the plaintiff in error previously given before the examining magistrate, and a copy of which was read upon the trial by the prosecution. The copy of the testimony of plaintiff in error, so given before the examining magistrate, was introduced by the prosecution without objection on the part of the defense, and was offered as a statement of plaintiff in error made out of court; and it appears, that one witness, who was examined for the prosecution, stated, by agreement of both parties, what plaintiff in error said when he testified before the examining magistrate. Plaintiff in error asked, and the court below gave at his request, instruction numbered 23, which is as follows:

"The court further instructs the jury that in this case the People have offered in evidence the testimony of the defendant, Daniel P. Gott, given by him on his examination before the justice of the peace, for the crime for which he is now on trial, and that the whole of the testimony so read must be taken together, as well that part which makes for the accused, as that which may make against him, and if any part of such testimony is in favor of the defendant, and is not apparently improbable or untrue, when considered with all the other evidence in the case, then such part of his testimony is entitled to as much consideration from the jury, as any other part of his testimony. The testimony, so offered and read for

the People, must be considered as the testimony of the defendant in the case so far as it goes."

The plaintiff in error was not called by either party, upon the trial of this case, as a witness to testify to the occurrences which took place on the night of June 8, 1899. But instruction 23 directs the jury to consider the testimony of the plaintiff in error, as offered and read by the People, as the testimony of the plaintiff in error, and to treat it as though it had been introduced by the plaintiff in error. The only instructions, given for the prosecution, which are in any way of the character suggested by the objection now under consideration, are two instructions, in which the court told the jury that, in weighing the testimony of the plaintiff in error, they had the right to take into consideration the fact, that he was the defendant and was interested in the result of the suit. These instructions were not erroneous in view of the position taken by the plaintiff in error himself, that his previous examination, taken before the examining magistrate, should be regarded as though it had been introduced by himself upon the trial of this case.

The plaintiff in error could not have been injured by any of the instructions, calling the attention of the jury to the fact that he was interested in the result of the prosecution, for the reason that several instructions were given in his behalf, which told the jury that, if they were unable from the evidence to determine whether the defendant or an unknown burglar, as claimed by the defense, fired the fatal shot, or if they believed, from a consideration of all the evidence, that it pointed as clearly to an unknown burglar as the person who committed the crime in question, as it did to the defendant, or if, after a fair and full consideration of all the evidence, the jury entertained any reasonable doubt as to whether an unknown burglar or the defendant was the guilty party, then the jury should consider the case precisely the same, as though it had been proved that some

person other than the defendant fired the fatal shot, and in such case should acquit him. These instructions were favorable to the defendant, and gave him the full benefit before the jury of his own statement that his wife was killed by a burglar, and not by himself.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*