(May 24, 1905.)

## STATᴸ v. SLY.
### [80 Pac. 1125.]

CRIMINAL LAW—SUFFICIENCY OF INFORMATION—ALLEGATION OF DEATH—SEPARATION OF JURY—WHEN ERROR PRESUMED.

1. An information which charges that the defendant, ''at the county of Latah, state of Idaho, on the twenty-seventh day of January, A. D. 1904, then and there being, did then and there willfully, unlawfully and feloniously and of his deliberately premeditated malice aforethought, kill and murder one John H. Hays, a human being, by then and there unlawfully and feloniously, and of his deliberately premeditated malice aforethought, shooting at and against the body and person of the said John H. Hays, with a certain gun then and there loaded with gunpowder and leaden bullet,'' etc., *held*, a sufficient averment that the death of the said Hays ensued and of the means by which the homicide was perpetrated.

2. The code has provided for the same liberality in pleadings and the construction thereof in criminal cases as in civil cases, and if the substantial facts necessary to constitute the crime charged appear in the indictment or information it will be held sufficient.

3. An allegation that the defendant at a specified time and place did ''kill and murder one John H. Hays'' is a sufficient allegation that the latter died.

4. Where the defendant in a capital case shows that the jury have separated after having been sworn to try the case, such fact is sufficient *prima facie* showing to entitle him to a new trial and to shift the burden onto the state of showing clearly and beyond a reasonable doubt that nothing transpired during such separation or on account thereof that did or could prejudice the defendant in any of his rights.

Opinion of the Court—Ailshie, J.

5. ID.—Where the state makes such a showing a new trial will be denied.

6. Conduct of officers in charge of juries and the·receiving of mail by jurors commented upon.

(Syllabus by the court.)

APPEAL from the District Court in and for Latah County. Honorable Edgar C. Steele, Judge.

Appellant was informed against on the charge ·of murder, and was convicted of murder in the second degree, and sentenced to imprisonment for life. From the judgment and an order denying his motion for a new trial he appealed. Affirmed.

Stewart S. Denning and Warren Truitt, for Appellant, cite no authorities not found in the opinion on the points decided.

J. J. Guheen, Attorney General, and W. E. Stillinger, County Attorney for Latah County, for the State. All authorities by them cited are found in the opinion upon the point decided.

AILSHIE, J.—The defendant relies upon two principal assignments of error for a reversal of the judgment in this case: 1. That the court erred in overruling the demurrer to the information; and 2. Alleged separation of the jury after they had been accepted and sworn to try the case.

It is contended that the information in this case does not charge that the person assaulted died within a year and a day after the infliction of the wound. The charging part of the information is as follows:

"The said William E. Stillinger, the prosecuting attorney as aforesaid, by this information accuses the said defendant, Lorenzo Payne Sly, of the crime of murder, committed as follows:

"That the said Lorenzo Payne Sly, at the county of Latah, state of Idaho, on the twenty-seventh day of January, A. D. 1904, then and there being, did then and there willfully, unlawfully and feloniously and of his deliberately premeditated

malice aforethought, kill and murder one John H. Hays, a human being, by then and there willfully, unlawfully and feloniously, and of his deliberately premeditated malice aforethought, shooting at and against the body and person of the said John H. Hays, with a certain gun then and there loaded with gunpowder and leaden bullet, and which said gun he, the said Lorenzo Payne Sly, then and there held in his hands.''

It is claimed by appellant that under the statute of this state, an indictment or information should charge the offense with all the strictness and particularity required at common law, and in support thereof cites *People v. Aro*, 6 Cal. 207, 65 Am. Dec. 503; *People v. Wallace*, 9 Cal. 30; *People v. Cox*, 9 Cal. 32; *People v. Lloyd*, 9 Cal. 55; *People v. Coleman*, 10 Cal. 334; *People v. King*, 27 Cal. 507, 87 Am. Dec. 95; *People v. Cronin*, 34 Cal. 191. It seems to us, however, that section 7675, Revised Statutes, which provides that ''all the forms of pleading in criminal actions, and the rules by which the sufficiency of pleadings is to be determined, are those prescribed by this code,'' is a sufficient answer to this contention. That section was evidently adopted for the purpose of abrogating the strictness of the common-law form of indictment. Sections 7677, 7678 and 7679 of the statute provide what an indictment or information must contain and the form thereof, and are as follows:

''Sec. 7677. The indictment must contain: 1. The title of the action, specifying the name of the court to which the indictment is presented, and the names of the parties; 2. A statement of the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended.

''Sec. 7678. It may be substantially in the following form: The state of Idaho against A. B., in the district court of the ——— judicial district, in the county of ——, —— term, A. D. eighteen ———:

''A. B. is accused by the grand jury of the county of ——, by this indictment, of the crime of (giving its legal appellation, such as murder, arson or the like), committed as follows:

"The said A. B., on the —— day of ————, A. D. eighteen ——, at the county of —— (here set forth the act or omission charged as an offense).

"Sec. 7679. It must be direct and certain as it regards: 1. The party charged; 2. The offense charged; 3. The particular circumstances of the offense charged, when they are necessary to constitute a complete offense."

These provisions of the statute were adopted by the territorial legislature in 1864, and were taken from the California code. Prior to the adoption of these statutes the supreme court of California had considered the question of sufficiency of indictments, and in *People v. Aro, People v. Wallace, People v. Cox,* and *People v. Lloyd, supra,* held to the strict rule of the common law, and under the doctrine announced in those cases there is no doubt but that the information used in the case at bar would be held insufficient.

In *People v. Stevenson,* 9 Cal. 274, the court began to relax the rule announced in the Aro case, and continued to manifest evidences of a desire to depart from the severity of that rule, as will be seen from an examination of *People v. Dolan,* 9 Cal. 576, and *People v. Judd,* 10 Cal. 507.

In *People v. King, supra,* the court reviewed a number of the foregoing authorities and in a large measure repudiated the doctrine previously announced to the effect that the strictness of the common-law rule should be followed in that state, and held that the rules of pleading in criminal cases were prescribed in the statute, and that a compliance therewith was sufficient. This latter case was followed in *People v. Cronin, supra,* and that case was in turn cited with approval in *People v. Murphy,* 39 Cal. 55, and *People v. Sanford,* 43 Cal. 29, in both of which latter cases the court passed upon substantially the same question involved in the case at bar. In *People v. Murphy,* the charging of the indictment was as follows: "The said John Murphy, on or about the thirteenth day of October, A. D. 1868, at and in the county and state aforesaid, feloniously, willfully, and of his malice aforethought, did kill and murder Patrick Murray," etc. Upon the sufficiency of such

indictment the court said: "It is objected to this indictment
that it does not state the particular circumstances necessary
to constitute the offense charged, and the particulars specified
in the exceptions are, that it does not specify the means by
which the death was occasioned, and that the deceased died
within a year and a day after the stroke was received, or the
cause of death administered. The sufficiency of the indictment
is not to be tested by the rules of common law, but by the re-
quirements of the Criminal Practice Act of this sta.e. That
act provides that the particular circumstances need not be
stated, unless they are necessary to constitute the offense
charged. Murder is the unlawful killing of a human being,
with malice aforethought and certainly the means by which
the killing is accomplished can never become material in as-
certaining the offense charged. The requirement that it must
appear that the party died within a year and a day is a rule
of evidence merely. Unless the party died within that time
the prosecutio: will not be permitted to show that he died of
the injury received."

In *People v. Sanford,* the indictment was as follows: "The
said Cyrus Sanford is accused by the grand jury of the county
of Los Angeles, state of California, by this indictment, found
this eighth day of September, A. D. one thousand eight hun-
dred and seventy, of the crime of murder, committed as fol-
lows: The said Cyrus Sanford, on the fourth day of Septem-
ber, A. D. eighteen hundred and seventy, at the county and
state aforesaid, did feloniously, willfully, maliciously, and of
his malice aforethought, shoot, kill and murder one Enoch
Barnes, contrary to the form, force and effect of the statute
in such cases made and provided, and against the peace and
dignity of the people of California." And in passing upon
its sufficiency, the court said: "It is objected that 'the indict-
ment does not state that Barnes died within a year and a day,'
etc. This objection rests upon the circumstance that the time
of the death is . ot specifically stated; and if here be anything
in the objection, it might have been extended further, as it is
not specially stated that Barnes died at all. But the aver-
ment in substance is that he died on the fourth day of Septem-

ber, 1870, for it is alleged that on that day the prisoner, of his malice aforethought, did kill and murder him—and this, under the provisions of the Criminal Practice Act, is sufficient. (*People v. Cronin,* 34 Cal. 191.) ''

This latter rule seems to have been followed by the California court continuously ever since the Murphy and Sanford cases. It is true that at the time of the adoption of these statutes by the Idaho legislature, the California court was still adhering to the strict rule announced in the Aro case, though manifesting evidence of an intention to veer toward the more liberal rule. It is true that under the recognized rule of statutory construction, where a statute is adopted from another state, the construction previously placed upon it by the courts of that state is also adopted. While the question before the court has not previously been passed upon in this state, still in every case where the sufficiency of an indictment or information has been under consideration, this court has adopted the liberal construction and held that the indictment or information was sufficient where it charged the offense in the language of the statute defining it. We do not find this court citing the Aro case and other cases following the rule there announced in any instance; but, on the other hand, we find as early as *People v. Butler,* 1 Idaho, 231, the court announcing that a description of the offense in the language of the statute is sufficient, and citing *People v. Cronin* in support thereof.

Again, in *People v. Walters,* 1 Idaho, 271, the court announced the same principle, and cited *People v. Cronin* and *People v. King* as authority. *Territory v. Evans,* 2 Idaho, 425, 17 Pac. 139, *State v. Elington,* 4 Idaho, 529, 43 Pac. 60, *State v. Alcorn,* 7 Idaho, 599, 97 Am. St. Rep. 252, 64 Pac. 1014, *State v. Keller,* 8 Idaho, 699, 70 Pac. 1051, and *State v. Shuff,* 9 Idaho, 115, 72 Pac. 664, are all to the same effect.

It is clear to our minds from the foregoing authorities that it has never been the intention of this court since its organization under the territorial government to the present time, to follow the doctrine laid down in the Aro and other early California cases in passing upon the sufficiency of an indictment or information.

Appellant complains of the information in thi case upon the particular and specific ground that it does not allege that the person killed died within a year and a day after the firing of the shot by the defendant. We do not think there is any real merit in this contention. It is true that the word "murder" is a legal and technical term, and yet it implies something more than mere killing, though it includes all the elements of the latter word; but there is nothing technical about the word "kill." It means, to deprive of life, to put to death, to slay. And when the prosecutor charged that the defendant did "kill and murder one John H. Hays," the defendant had clear and specific notice of the offense with which he was charged. "The allegation that the defendant killed the deceased," says Anders, C. J., in *State v. Day,* 4 Wash. 104, 29 Pac. 984, "is certainly, in effect, an averment that the latter died." We think the information in this case was sufficient to charge the defendant with the crime of murder, and we so hold. (See *Leonard v. Territory,* 2 Wash. Ter. 381, 7 Pac. 872; *Timmerman v. Territory,* 3 Wash. Ter. 445, 17 Pac. 624; *Freidrich v. Territory,* 2 Wash. 358, 26 Pac. 976; *State of Nevada v. Millain,* 3 Nev. 409.)

As to the separation of the jury the facts are substantially as follows: After the jury was accepted and sworn to try the case, and during the progress of the trial and at a recess of the court, the juror Smith, who was suffering from blood poison in the arm, went, in company with the bailiff, to the hospital and had his arm treated and dressed. It appears that the bailiff was keeping the jury at the Hotel Del Norte, a distance of about one-fourth of a mile from the hospital. When the juror Smith asked the bailiff to go to the hospital with him for the purpose of having his arm treated, the bailiff left the remaining eleven jurors in their room at the hotel and locked the doors, and then took the juror Smith to the hospital, and was gone for a period of about fifteen minutes, as shown by the numerous affidavits filed and considered upon the motion for a new trial. The prosecuting attorney filed the affidavits of a number of jurors in which they testify that the eleven jurors were left in their room and the doors were locked by the bailiff

when he left, and that during his absence with the juror Smith, no one of the eleven jurors spoke to any other person or communicated with any other person in any way or manner, and that none of them were out of the room during the absence of the bailiff and the other juror. The prosecutor also presented the affidavit of the juror Smith, the bailiff and the physician who treated Smith's arm, by which affidavits it is shown that Smith during his absence from the remainder of the jury did not speak to or talk with anyone except the bailiff and the physician, and that nothing whatever was said with reference to the case on trial, and that no subject was discussed with the physician except the condition and treatment of his arm. The other charge of separation is that at one of the recesses of the court, while the jury was passing the postoffice in the city of Moscow, the juror Jain was permitted to step inside the postoffice, a distance of twenty or thirty feet, from the remainder of the jury, and inquire if there was any mail in the office for him. It is shown by the evidence that he was in view of the bailiff and remainder of the jury during this time, and that all the conversation that took place was his inquiring for his mail, and that he did not receive any mail, and that he met in the office a young man named Hansen and shook hands with him, and remarked how the young man had grown since he had last seen him.

The foregoing are the principal facts constituting the separation of the jury complained of in this case.

The appellant contends that under the statute of this state whenever the defendant in a case of homicide shows that a separation of the jury has taken place after they have been sworn to try the case, that such fact is error *per se* and ground for reversal of a judgment of conviction. By the provisions of section 379 of the Criminal Practice Act adopted by the territorial legislature in 1864, it was provided that "in all cases on the trial of an indictment for felony the jury sworn shall be kept together until they are finally discharged by the court from further consideration of the cause." This section was re-enacted as section 377 of the Criminal Practice Act of 1875. As may be seen from this statute, it was made the duty

of the court to keep the jury together in all felony cases from the time they were sworn to try the case. This statute, however, evidently failed to meet the approval of the people, and in January, 1881, the legislature so amended it as to permit the jury to separate at any time prior to the final submission of the cause in all felony cases, except murder, and that statute has remained the law of the territory and state of Idaho ever since, and is now embodied in section 7880, Revised Statutes. Neither of these statutes were taken from the California code. An examination of the statutes of that state will show that they have had a statute since 1851 permitting separations of the jury at the discretion of the court in all felony cases at any time prior to the final submission of the cause. (See Hittell's Code, sec. 1980; 4 Deering's Code, sec. 1121.) In this instance, therefore, we have neither borrowed the statute nor the construction from California. While our statute originally prohibited a separation of the jury in any felony case after being sworn to try the cause, and still does so in cases of homicide, yet a separation prior to final submission of the case has never been made, in specific terms, a ground for new trial. (See Criminal Practice Act of 1874, sec. 424; Rev. Stats., sec. 7952.) Under this statute a new trial could only be granted on account of a separation of the jury prior to retiring to deliberate upon their verdict, on the theory that it constituted "misconduct" of the jury for which a new trial may be granted. The California statute is consistent in that it makes a separation of the jury in violation of their section 1121, *supra,* a ground for a new trial under the provisions of their section 1181 (4 Deering's Code), which is the same as our section 7952. The legislation in this state on the subject of separation of the jury shows that our legislature has been passing from the strict rule of keeping juries together during all trials of felony cases to the more liberal rule of permitting them to separate. There is a great deal of conflict among the authorities on the question as to whether or not the separation of the jury is *per se* reversible error, or whether the defendant must show that during the separation something has occurred prejudicial to his rights, or

whether the separation is only presumptive error which may be rebutted by the state. The California court seems to have alternated among these different rules, and it is really difficult to determine just what the position of that court now is upon this question. (See *People v. Backus,* 5 Cal. 275; *People v. Bemmerly,* 98 Cal. 299, 33 Pac. 263; *People v. Hawley,* 111 Cal. 78, 43 Pac. 404.)

It should be observed that in the California cases discussing this question reference is had to separations of the jury after the cause has been finally submitted to them. Counsel for appellant places great reliance upon *People v. Adams,* 143 Cal. 208, 101 Am. St. Rep. 92, 76 Pac. 954, 66 L. R. A. 247, a recent case from the California court. One quotation from that opinion is sufficient to show that they hesitate to lay down the strict rule that every separation is *per se* reversible error: ''The circumstances of a separation in a particular case,'' says Justice McFarland, ''might possibly be such as to themselves show that no prejudice to the defendant could have resulted, and in such case a court perhaps would be warranted in upholding the verdict, notwithstanding the direct violation of an express provision of the code intended for the protection of a defendant, but we need not pass upon that question, for it does not arise in the case at bar.''

In *State v. Levy,* 9 Idaho, 483, 75 Pac. 227, this court had occasion to consider a similar question, and held that the misconduct or separation of the jury complained of in that case did not constitute such misconduct as was contemplated by the statute, and therefore refused to grant a new trial on that ground. The facts disclosed in that case failed to show a separation of the jury as contemplated by the statute. The court there cited *People v. Bemmerly, supra,* and *People v. Bush,* 68 Cal. 623, 10 Pac. 169, in support of the conclusion reached. The court's attention, however, was not called to the difference between the California statute and our own on this subject, nor was our attention called to the fact that our statute upon this subject was not taken from the California statute. Had our attention been called to the difference in the

legislation of the two states, it would have made no difference, we apprehend, in the conclusion reached; 'ut, nevertheless, the court would undoubtedly have declined to cite the Bemmerly case as authority under our statute. Without entering into any extended discussion of this question or the reasons for the various rules, we are inclined, after an exhaustive examination of the authorities, to adopt a similar rule with reference to a separation of the jury, as that adopted in *State v. Bland* (9 Idaho, 796), 76 Pac. 780, with reference to communications taking place between the judge and jury in the absence of the defendant and after the jury had retired to consider of their verdict. It seems to us the safer and better rule and one more consonant with reason and justice to say that when the defendant shows that the jury have separated in violation of the statute, he has made a sufficient *prima facie* showing to entitle him to a new trial and to shift the burden onto the state of showing clearly and beyond a reasonable doubt that nothing transpired during the separation, or on account of the separation, that did or could prejudice the defendant, and that if the state succeeds in making such a showing, then a new trial should be denied. The purpose of the statute, as well as the result intended to be accomplished by these trials, is to attain the ends of justice, and we think the conclusion at which we have arrived will accomplish that result.

Rules amounting in substance to the same as above announced have been followed in Nevada (*State v. McMahon,* 17 Nev. 365, 30 Pac. 1000), Colorado (*Chestnut v. People,* 21 Colo. 512, 42 Pac. 656), Kansas (*State v. Gould,* 40 Kan. 258, 19 Pac. 739), Missouri (*State v. Schmidt,* 137 Mo. 256, 38 S. W. 938), Texas (*Stewart v. State,* 31 Tex. Cr. Rep. 153, 19 S. W. 908), Wisconsin (*Hempton v. State,* 111 Wis. 127, 86 N. W. 596), Indiana (*Cooper v. State,* 120 Ind. 377, 22 N. E. 320), Mississippi (*Carter v. State,* 78 Miss. 348, 29 South. 148), Illinois (*Gott v. People,* 187 Ill. 249, 58 N. E. 293), and Montana (*Territory v. Hart,* 7 Mont. 489, 17 Pac. 724).

For a review and discussion of authorities, see 1 Spelling on New Trial and Appellate Practice, sections 152-156.

Applying the foregoing principles to the facts disclosed in this case, we think the ends of justice have been attained, and that there is no such error disclosed as to demand a new trial. The state has established, we think, clearly and beyond all reasonable doubt that the jury have been free from outside influences and communications; that the juror Smith's absence from the other jurors was caused purely by his sickness, and was solely for the purpose of administering to his necessities, and that in the meanwhile he conversed with no one concerning the case, and was not so situated as to expose him to any pressure or influence from the outside; that the irregularity in the conduct of the juror Jain, who stepped aside from the remainder of the jury to inquire for his mail, did not expose him to any influence that could have prejudiced the defendant in any manner whatever.

We are of the unanimous opinion, however, that the conduct of the jury bailiff in this case is reprehensible and calls for severe rebuke. It is getting to be too frequent in this state that in criminal cases appealed to this court it is shown that conversations and communications have taken place with juries or that mail has been delivered to them, or that some temporary separation has taken place. These things should not be allowed, and if jury bailiffs who permit them were fined or imprisoned for such misconduct, there would be less cause for complaint on appeal in these respects. In *State v. Bland, supra*, we had occasion to express our views on a kindred topic, but that warning does not seem to have in any way diminished the frequency of these occurrences. There can be no occasion for a juror in a capital case going to the postoffice to inquire for his mail, for the reason that jurors required to be kept together should not be permitted to receive mail during such time or until it has first been submitted to the court and counsel for their examination. (*State v. Bland, supra.*) And again, in this case, while it is clear to our minds that the juror Smith needed and required medical attention, and it was proper for him to have such, it was

the duty of the bailiff to call that fact to the attention of the court and get his instructions from the court, instead of taking the matter in his own hands and presuming to be the judge of the matter himself. The best way to prevent the necessity for new trials is to observe the provisions of the statute in the original trial, and there is no excuse for not doing so. These slipshod methods are allowed to go on unrebuked, and then on appeal this court is asked to overlook a multitude of violations of the statute in order to avoid the necessity of new trials.

As before observed, while some irregularities have occurred, we think the ends of justice have been met in this case, and the judgment will therefore be affirmed.

Stockslager, C. J., and Sullivan, J., concur.