[No. 8600. Department One. July 1, 1910.]

## The State of Washington, *Respondent*, v. Charles Phillips, *Appellant*.[1]

Homicide—Information—Alleging Death. An information charging that the defendant killed the deceased on a certain day, sufficiently alleges that the deceased died on that day.

Appeal—Record—Instructions. Under Rem. & Bal. Code, §395, written instructions and requests for instructions are part of the record without being embodied in the statement of facts or bill of exceptions.

Criminal Law—Appeal—Harmless Error. Upon a conviction of murder in the second degree, error in instructions in defining deliberation and premeditation are immaterial.

Homicide—Instructions—Self-Defense. Instructions upon the subject of self-defense to the effect that the defendant had the right to act upon appearances and that the necessity must 'be real or apparent, are not objectionable because closed with the statement that "the jury and not defendant must be judges of these matters."

Homicide—Self-Defense—Duty to Retreat. The duty to retreat before taking life in self-defense has no application to one against whom a felonious assault is made with a deadly weapon.

Same—Instructions. In a prosecution for murder where the deceased had threatened the defendant and each had armed himself with a rifle and they met and both instantly fired almost simultaneously, it is prejudicial error to give an instruction upon the common law rule relating to the duty to retreat or warn an adversary, if he had time to do so, as it had no application to the facts of the case.

[1]Reported in 109 Pac. 1047.

CRIMINAL LAW—TRIAL—MISCONDUCT OF COURT.  In a prosecution for homicide, it is misconduct on the part of the trial judge, requiring a new trial, to make an imputation against the good faith of counsel in taking objections or exceptions to the ruling of the court upon the admission of evidence.

Appeal from a judgment of the superior court for Okanogan county, Taylor, J., entered September 20, 1909, upon a trial and conviction of murder in the second degree.  Reversed.

*E. Fitzgerald* and *Frank H. Foster* (*Geo. W. Sampson* and *Alex M. Winston*, of counsel), for appellant.

*William C. Brown*, for respondent.

RUDKIN, C. J.—The defendant was convicted of the crime of murder in the second degree, and prosecutes this appeal from the final judgment and sentence of the court.  A demurrer interposed to the information was overruled, and upon this ruling, the first error is assigned.  The information, following a form often approved by this court, charged, "That he, the said Charles Phillips, in the county of Okanogan, in the state of Washington, on or about the 25th day of July, 1908, purposely and of his deliberate and premeditated malice killed one Rawl Siebert, etc."  The specific objection urged against the information is its failure to charge that Rawl Siebert died within a year and a day from the infliction of the mortal wound.  There is no merit in this contention.  As said by this court in *State v. Day*, 4 Wash. 104, 29 Pac. 984, "The allegation that the defendant killed the deceased is certainly in effect an averment that the latter died."  See, also, *State v. Cronin*, 20 Wash. 512, 56 Pac. 26; *State v. Yandell*, 34 Wash. 409, 75 Pac. 988; *People v. Sanford*, 43 Cal. 29; *State v. Sly*, 11 Idaho 110, 80 Pac. 1125.

Errors are assigned on the instructions of the court, and on the refusal of the court to instruct as requested, and in this connection the appellant is met by a motion to strike the instructions and the requests for instructions from the record,

because not embodied in a statement of facts or a bill of exceptions. This latter contention cannot prevail. The charge of the court was made wholly in writing, the requests for instructions were also in writing, and section 395, Rem. & Bal. Code, expressly provides that such instructions and requests for instructions, when filed in the cause, become a part of the record, "and it shall not be necessary or proper, for any purpose, to embody the same in any bill of exceptions or statement of facts."

A number of assignments of error are based on the court's definition of the terms deliberation, and premeditation, but these assignments we need not consider, as they apply only to the crime of murder in the first degree, of which the appellant stands acquitted by the verdict of the jury. Two of the instructions excepted to, defining the right of self-defense, were given in the following language:

"*Further as to self-defense*: In order to justify the taking of human life on the grounds of self-defense, there must be a necessity, real or apparent, to prevent death or great bodily harm. The prisoner has a right to act on the circumstances as they appeared and are proven, provided you are convinced that the circumstances, as proven, showed an appearance of an imminent, threatening, present and immediate danger to life or great bodily harm,—the jury and not defendant must be judges of these matters."

"*Self-Defense:* If you find that defendant was where he had a perfect right to be and that Siebert so threatened him or so acted towards him as to induce in him a reasonable and honest ground of apprehension that he was in imminent danger of life or limb, Phillips had a legal right at once to use necessary force and means to prevent the threatened injury, even to the extent of taking Siebert's life, but although Phillips may have been where he had a right to be, and Siebert was threatening him with a rifle, still Phillips would have no right to take the life of Siebert without first warning him to desist from his attack, unless you find from the evidence that Phillips was justified in believing that he had no time to give such warning."

The appellant earnestly insists that the first quoted in-

struction is erroneous because of the closing words: "The jury and not the defendant must be the judges of these matters." While this part of the charge may not be happily worded, we do not think that it is subject to the criticism, or open to the objection urged against it. The court charged the jury that the appellant had a right to act *upon appearances*, and that the necessity for taking the life of his adversary must be real *or apparent*. Of course it was for the jury to say, under all the circumstances, whether the danger was real or apparent, and whether the appellant acted from honest convictions induced by a reasonable belief, or otherwise. We do not think that the language complained of imports anything more than this.

While the second instruction complained of may be a correct statement of the law in the abstract, it had no application to the facts before the court in this case. It was no doubt the established rule of the common law that a person assaulted must retreat to the wall or warn his adversary to desist before taking his life in self-defense, provided always there was time and opportunity for making such retreat or giving such warning, in safety. But it was likewise an established rule of the common law that,

"A man may repel force by force in defense of his person, habitation, or property against one who manifestly intends or endeavors by violence and surprise to commit a known felony, such as murder, rape, robbery, arson, burglary, and the like, upon either. In these cases he is not obliged to retreat, but may pursue his adversary until he has secured himself from all danger; and if he kill him in so doing, it is called justifiable self-defense." *State v. Marfaudille*, 48 Wash. 117, 92 Pac. 939, 14 L. R. A. (N. S.) 346, and authorities cited.

In other words, the duty to retreat or warn has no application to one against whom a felonious assault is committed with a deadly weapon. It is idle to say that a person assaulted by a highwayman in the street, or by a burglar in his home, must retreat or give warning before he can law-

fully resort to the right of self-defense. Without attempting to pass upon conflicting testimony or the credibility of witnesses, the rule as thus stated holds good in this case. Briefly stated, the situation was this. The appellant and the deceased had some difficulty at Republic some three weeks prior to the homicide in question. As a result of this difficulty there was testimony tending to show that each had made threats against the life of the other. In anticipation of a meeting with the appellant, the deceased had armed himself with a rifle. Whether he thus armed himself for the purpose of making an assault, or for the purpose of self-defense, was for the jury to say. On or about the 25th day of July, 1908, the parties met in a public highway. The appellant was on horseback with his rifle thrown across his arm. The deceased was in a wagon with his rifle within easy reach. As the parties met, the deceased seized his rifle, sprang from the wagon, and each sought to take the life of the other with a deadly weapon, at short range. Within a few seconds, and almost simultaneously, two shots were fired, one by the appellant and the other by the deceased. A preponderance of the testimony tends to show that the deceased fired first. The appellant was unharmed and the deceased was killed. The only dispute in the testimony was, who was the aggressor? The party first assaulted, whether the appellant or the deceased, was clearly acting in self-defense. There was neither time nor room for retreat or warning, and an instruction upon that question could only tend to mislead or confuse the jury.

It is said that this instruction was copied almost literally from an instruction approved by this court in *State v. Stockhammer*, 34 Wash. 262, 75 Pac. 810. This is true, but an instruction which is correct in the abstract, or correct as applied to one state of facts, may be very misleading when applied to another and different state of facts. When the court instructed the jury that a person against whom a murderous, felonious assault is committed with a deadly weap-

on must retreat or give warning, before taking the life of his assailant in self-defense, it imposed upon him a burden which the law does not sanction, and the fact that the instruction was qualified by the proviso, if he has time to retreat or give such warning, does not necessarily render the instruction harmless. In other words, instructions covering every possible phase of the law of self-defense should not be given in any case unless called for by the testimony, as abstract rules of law not applicable to the facts of a given case are sometimes as misleading as incorrect rules. So much of the law of self-defense as is applicable to the facts before the court should be given in plain and concise language, but rules of law applicable to other and different facts should be withheld from the jury.

We deem it unnecessary to say more concerning this instruction, for the judgment must be reversed on another ground which we will now consider; namely, misconduct of the trial court. During the progress of the trial the appellant was offering proof of a conversation had between the appellant and the witness on the stand, regarding the deceased. To this offer the state objected, whereupon the following colloquy took place between the court and the attorney for the appellant:

"Mr. Fitzgerald. I expect to connect this your honor. Judge. You can make a lot of declarations. Mr. Fitzgerald. I except to what the court says. Judge. Every time the court speaks take an exception. Mr. Fitzgerald. I will. Judge. Every time the court bats his eye take an exception."

As said by Chief Justice Cooley in *Wheeler v. Wallace,* 53 Mich. 355, 364, 19 N. W. 33, 37:

"If the only question that could arise upon this colloquy were one of the proper courtesy to be observed between court and counsel, we should be inclined to leave it to the judge's own sense of propriety, taking it for granted that there must have been in the case some undisclosed circumstance that disturbed the judicial calmness, and caused the utterance

of unguarded expressions for which, as the counsel in the case was a thoroughly reputable gentleman, we may well suppose the judge took early occasion to apologize."

But we are of the opinion that something more than a mere question of courtesy or propriety is involved here. Whether the words of the court were spoken in anger, as claimed by the one side, or in a joking way, as claimed by the other, we may not inquire, but which ever view we accept, the conduct of the judge was not in keeping with either the time or the place. The appellant was on trial for his life, and as said by this court in *State v. Coella*, 3 Wash. 99, 28 Pac. 28:

"The solemnity of a trial upon the issue of which hangs the life of a human being, wherein it is to be determined whether such life shall be taken as a just penalty to satisfy the demands of justice outraged, if so found, can scarcely be approached in any other proceeding over which human beings have control. Certainly any man connected therewith, filling an important position, in arriving at a decision therein, and fulfilling the duties of his position, would realize the awful responsibility resting upon him, and act with becoming dignity."

See, also, *Cronkhite v. Dickerson*, 51 Mich. 177, 16 N. W. 371; *Walker v. Coleman*, 55 Kan. 381, 40 Pac. 640, 49 Am. St. 254; *Hubbard v. State*, 37 Fla. 156, 20 South. 235; *House v. State*, 42 Tex. Cr. 125, 57 S. W. 825; *Poole v. State*, 45 Tex. Cr. 348, 76 S. W. 565.

Counsel for appellant had offered testimony which was perhaps incompetent and irrelevant in itself, under a promise to connect it up and show its competency at a later stage of the trial,—a common practice on the trial of lawsuits, and the response of the court, "You can make a lot of declarations," cannot be construed otherwise than as an imputation against the good faith of counsel making the offer. In other words, it was a clear imputation that counsel was attempting to get improper testimony before the jury under a promise he did not hope or expect to fulfill. And when counsel ex--

cepted to the remarks of the court, as was his right and his duty under the law, he was met by a challenge to take an exception every time the court spoke, and every time the court batted his eye. The aid of counsel is guaranteed by the constitution to every person accused of crime, and this is universally recognized as one of the surest safeguards against injustice and oppression. Any conduct or statement on the part of the court that tends to impair the influence or destroy the usefulness of counsel is palpable and manifest error. The appellant may be guilty, and his previous reputation may weigh heavily against him, but this affords all the greater reason why no word or act of the court should add to or increase the heavy burden his counsel is already supporting.

Other errors are assigned, but they call for no special consideration, as the questions will not arise, in the same form at least, on another trial. For the reasons stated, the judgment of the court below is reversed, and the cause remanded for a new trial.

Gose and Dunbar, JJ., concur.