## Commonwealth v. Cunningham

*John G. Lamoree*, district attorney, for Commonwealth.
*Robert L. Wallace*, for defendant.

BRAHAM, P. J., June 9, 1938.—Defendant was tried and convicted of rape. The indictment charged that Lewis Cunningham, in company with Loy Rickard, took a girl named Marie Moore in an automobile to a lonely spot in this county where each committed rape upon her. The two cases were, by agreement, tried together. A motion for a new trial has been made on behalf of Lewis Cunningham on a number of grounds.

The first and most important reason assigned in support of a new trial is the allegation that defendant, who was out on bail, was not present in court at the time the verdict was received. No attack is made upon the regu-

larity of the record in this particular, but in support of the motion for a new trial it is alleged that he was absent and this is supported by affidavit. In the interest of justice the court has no hesitation in stating that defendant was in fact absent at the time the verdict was taken. The jury agreed late in the evening. Counsel for defendant were called and stated that they did not choose to come to court and that the verdict might be taken in their absence. Defendant, Lewis Cunningham, was thereupon called by the court crier but did not appear. The court waited some little time but was able to learn from friends and relatives of defendant in court only that he had left shortly before but nothing as to his whereabouts or when he would return. In accordance with a custom of long standing in this county, the court thereupon received the verdict of the jury in the absence of defendant. Defendant came into court a few minutes after the verdict was received.

The foundation of the claim that the failure of defendant to be present when the verdict was rendered is a fatal error in the trial, is to be found in the provision of the Act passed by the Colonial Legislature on May 31, 1718, 1 Sm. L. 105, which begins:

"Whereas King Charles the second, by his royal charter to William Penn, Esq. for erecting this country into a province, did declare it to be his will and pleasure," and continues in the second section: "That the enquiries and trials of all petty treasons, misprision, of treason, murder, manslaughter, and homicides, and all such other crimes and misprisions, as by this act, or any other act of assembly of this province are or shall be made capital or felonies of death, which have been or shall be done, committed, perpetrated or happen, within this province, shall be as by this act is directed."

In Blackstone's time, 168 crimes were triable in the oyer and terminer because punishable by death. Among these crimes was rape: 4 Lewis' Blackstone's Commentaries 1608, §211.

Two cases are relied upon by defendant as authority for his contention that the law of this Commonwealth still requires the presence of defendant upon the rendition of a verdict in any case of an offense once punishable by death under this statute. In Jacobs v. The Commonwealth, 5 S. & R. 315, where defendant was indicted for larceny and the record did not show the entry of an arraignment, Justice Gibson in affirming the judgment said by way of dictum:

"Every felony therefore, which at any time by act of assembly was punishable with death, is still considered as a capital offence, as far as regards the course of the trial, although capital punishment be now taken away from every crime, except murder in the first degree. With us larceny never was capital".

The second case is Prine v. The Commonwealth, 18 Pa. 103, in which defendants were indicted for burglary and larceny. Upon conviction and sentence it was assigned for error that the record showed the prisoners were not present when the verdict was tendered and it did not appear from the record that the prisoners were in court when sentence was pronounced upon them. Gibson, then Chief Justice, in reversing the judgment and directing that defendants be held to answer a fresh indictment, said:

"Never has there heretofore been a prisoner tried for felony in his absence. No precedent can be found in which his presence is not a postulate of every part of the record. He is arraigned at the bar; he pleads in person at the bar; and if he is convicted, he is asked at the bar what he has to say why judgment shall not be pronounced against him. These things are matter of substance, and not peculiar to trials for murder: they belong to every trial for felony at the common law".

To these cases may be added Dunn v. The Commonwealth, 6 Pa. 384, 387, in which it did not appear from the record that defendant was present when the verdict

was received and when sentence was passed. There it was said:

"In the case of Jacobs *v.* the Commonwealth, 4 Serg. & Rawle, 315, it was determined that, in all cases which were once felony of death, it must appear from the record that the defendant was arraigned, although the record showed that the defendant pleaded not guilty; and the judgment was reversed. At the rendition of the verdict, the prisoner is entitled to have the jury polled, so that each one shall answer on his own responsibility, face to face with the prisoner, as to his guilt or innocence." See also Wharton's Criminal Pleading & Practice 372 (8th ed).

A study of these early cases indicates that the foundation for the rule contended for is purely historical, being based upon what crimes were punishable by death in England, in 1718. Furthermore, Jacobs v. The Commonwealth, supra, relates to arraignment, and in Dunn v. The Commonwealth, supra, and Prine v. The Commonwealth, supra, the record did not disclose the presence of defendant either at the time the verdict was received or at the time of sentence. Obviously his presence at sentence is more important. Thus no case is squarely decisive of the matter of appearance at verdict and an examination of the subsequent cases on the point indicates the extent to which the general rules under the Act of 1718 have been relaxed.

In Holmes v. The Commonwealth, 25 Pa. 221, 224, the record neither averred the presence of the prisoner when the verdict was rendered nor did it show that he was not present. The court in sustaining the sentence said:

"Had this conviction been for murder, the record would not have supported it, for it does not affirmatively appear that the prisoner was present when the verdict was rendered. In felonies not capital it is allowable to presume that everything was rightly done until the contrary appears".

We might take refuge behind the doctrine of this case in the present instance but believe it to be in the interest of justice to state unequivocally that defendant was not present at the time the verdict was received. In Commonwealth v. Silcox, 161 Pa. 484, the prisoner actually was present when the verdict was received but the record did not show affirmatively his presence. His contention that this was fatal in a murder case, although he was found guilty only of manslaughter, was rejected. In Lynch v. The Commonwealth, 88 Pa. 189, in an able opinion by Chief Justice Agnew, the history of the rule was fully reviewed. Defendant having been convicted of larceny, it was held that, since larceny was at no time capital, the rule did not apply and his absence at the time of the verdict was immaterial.

In Commonwealth v. Opolka, 69 Pa. Superior Ct. 230, 234, upon trial of an indictment for selling liquor without a license, additional instructions were given the jury. This was held to be harmless, the court saying:

"The defendant was on bail and under his bond should have been in court. We see no merit in this contention; no harm was done. Had the charge been a felony the conclusion might be different: Prine v. The Com., 18 Pa. 103."

In Commonwealth v. Kintz, 79 Pa. Superior Ct. 433, upon indictment for forcible entry and detainer, the presence of defendant at the taking of the verdict was held to be unnecessary. In Halderman's Petition, 276 Pa. 1, 3, a writ for habeas corpus was brought for a prisoner sentenced for breaking and entering with intent to commit a felony and larceny. On the point now in question the Supreme Court said:

"A further error insisted upon rests on the failure to read the verdict when rendered so that it could be heard by the defendant. Presumably he was present,— he does not aver the contrary. In a non-capital case, such an objection as now made is futile: Holmes v. Com., 25 Pa. 221; Lynch v. Com., 88 Pa. 189; Com. v. Craig, 19

Pa. Superior Ct. 81." This is the last case found in which the Supreme Court has passed upon the rule.

The last statement of the Superior Court on the subject which has been discovered is found in Commonwealth v. Friedman et al., 94 Pa. Superior Ct. 491, 496, where, after conviction on an indictment for conspiracy to commit arson, defendant pleaded former acquittal because at a former trial the jury had been discharged in his absence, the court said:

"If the court had been in session at the time and the defendants and their counsel had been present, what could they have done but object to the discharge? They could not have prevented it. It has been held that in cases not capital it is not necessary that the prisoner be present when the verdict is rendered: Com. v. Craig, 19 Pa. Superior Ct. 81; Lynch v. Com., 88 Pa. 189."

In Commonwealth v. Davis, 17 D. & C. 488, Court of Oyer & Terminer of Delaware County, in an opinion by Broomall, J., it was held that in any case, whether felony or misdemeanor, defendant, if in jail, must be brought into court when the verdict of the jury is rendered; but if he is out on bail he may expressly or impliedly waive the right to be present in any except capital cases.

To determine whether this ancient principle of the common law contended for is still controlling in Pennsylvania, it is useful to examine the course of the law with respect to other technical requirements in the trial of cases by jury. Article I, sec. 10, of the Pennsylvania Constitution provides that no person shall, for the same offense, be twice put in jeopardy of life or limb.

The phrase "life or limb" has been construed by the Federal courts to apply to all criminal offenses: Ex parte Lange, 85 U. S. 163. The roots of the phrase go deep in the common law. It has been said that they relate to the ancient method of trial by battle: McFadden v. The Commonwealth, 23 Pa. 12. But the modern view is that, since there is now manifestly no offense the punishment for which involves jeopardy to the limb, save only the

death sentence in murder cases where life is taken, this ancient phrase applies only to capital cases: McCreary et al. v. Commonwealth, 29 Pa. 323. Commonwealth v. Simpson, 310 Pa. 380, is a case wherein defendant was tried upon an indictment for murder but the jury was discharged before verdict. He came on for trial again and upon the plea of double jeopardy it was ruled that he might be tried for the lesser offenses of murder in the second degree and voluntary manslaughter notwithstanding the constitutional provision. Similarly, although it has long been the rule that in murder cases the jury must not be allowed to separate, in Commonwealth v. Tenbroeck, 265 Pa. 251, 256, where the jury was allowed to separate, but the conviction was of second degree murder, it was held that, "the case ceases to be a capital one and the temporary separation of the jury, of which complaint is made, becomes unimportant". It should be noted that in Commonwealth v. Simpson, supra, Hilands v. The Commonwealth, 111 Pa. 1, and Commonwealth v. Fitzpatrick et al., 121 Pa. 109, were expressly overruled because applying the old construction as to jeopardy of life and limb.

Again, it has long been the law that upon sentence of death for murder in the first degree it should appear from the record that the prisoner was present in court when sentenced and was asked whether he had anything to say why sentence should not be pronounced upon him: Hamilton, etc., v. The Commonwealth, 16 Pa. 129. Yet in Commonwealth v. Senauskas, 327 Pa. 541, 549, it is pointed out that the reason for this rule in the common law was that:

"Putting this question to the prisoner gave him his last opportunity to speak to some one with power to save him from his impending doom. To deprive him of this last opportunity was a serious invasion of his rights, for at common law the defendant in cases of felony was not accorded the privilege of counsel nor could he take any appeal to a higher court. A sentence of death in Pennsyl-

vania has no such irrevocability about it as it had at common law." Where the reason for the rule ceases, the rule itself ceases.

The foregoing cases are cited to show how steadily, although perhaps insensibly, the administration of the criminal law has proceeded away from arbitrary rules founded purely upon historical grounds but lacking any measure of substantial justice. Our conclusion is, as the law stands today, it is not necessary in a rape case for a prisoner out on bail to be present in court at the time the verdict is rendered. The only action available to defendant had he been present would have been to request that the jury be polled. He was out on bail; he should have been present. His absence is an implied waiver of this right. Had he been in jail the court would have been bound to cause him to be produced in order that he might claim this right. When he was out on bail how long must the jury have been confined while we looked for him with a bench warrant? So to require would be, to quote the old phrase, "sticking in the bark of an old precedent". There is no such practical, compelling, common-sense reason for the rule except in capital cases. Therefore we conclude the law does not require the presence of defendant at verdict and this reason for a new trial is rejected.

There are certain other reasons assigned for a new trial in the way of after-discovered evidence and alleged misconduct of witnesses at the trial. These matters are considered more particularly in the opinion in the case of Commonwealth v. Loy Rickard and are not herewith repeated. It is sufficient to say here that they are such vague allegations regarding the bad character of the wronged girl as are often thrown together by men involved as is the present defendant. The affidavits on the point are rank hearsay and of no weight. The affidavit as to the threatening of witnesses is too trifling to merit serious consideration. It is not to be expected that rape can be committed without some persons feeling strongly about the matter. There may be even the "grinding of

teeth" complained of. But there is no allegation that any witness failed thereby to testify or that any item of evidence was withheld from the jury.

Being of the opinion that no substantial error was committed in the trial we make the following

*Order*

Now June 9, 1938, defendant's motion for a new trial is overruled and refused.