460 P.2d 711

STATE of Idaho, Plaintiff-Respondent,

v.

Nicolas RODRIGUEZ, Jr., Defendant-Appellant.

No. 10377.

Supreme Court of Idaho.

Oct. 31, 1969.

288

Denman, Reeves & Oksendahl, Idaho Falls, for appellant.

Robert M. Robson, Atty. Gen., and Mack A. Redford, Deputy Atty. Gen., Boise, Grant L. Young, Pros. Atty., Rigby, for appellee.

DONALDSON, Justice.

The defendant (appellant) Nicolas Rodriguez, Jr., was convicted of both murder in the first degree and assault with a deadly weapon with intent to commit murder and sentenced to life imprisonment on the murder charge and to five years imprisonment on the assault charge with the two sentences running concurrently. Appellant's motions for a mistrial and for a new trial were denied and the appellant has appealed to the Supreme Court from the judgment of conviction and the denial of his motions.

The evidence reveals that a quarrel was about to take place between the appellant and Andres Garza Cantu, the deceased victim's brother. However there is a conflict in the testimony with respect to whether the appellant challenged Cantu or Cantu challenged the appellant. For the purpose of preparing to fight fairly against Andres Cantu, the appellant gave his gun, which he kept to protect himself from death threats made by his wife's cousins, to his brother-in-law, Lopez. Lopez then handed the gun to one Thain Watson, a barber who had momentarily entered the barroom from his adjoining shop when he heard a fracus erupt in the barroom. Watson then placed the gun in a drawer located in his barber shop.

The appellant's brother-in-law, Lopez, was then struck by Guerra, the deceased victim. Lopez had recently undergone back surgery and still suffered pain at the time of the provocation by the deceased victim. Lopez was knocked to the floor, kicked, and threatened by the victim.

The appellant attempted to stop the fight by shouting and throwing a pool ball and beer bottle at the victim. The victim's brother, Cantu, chased the appellant out of the bar with the leg of a chair while the victim continued to kick and threaten the life of the appellant's disabled brother-in-law. The appellant then went to the barber shop and obtained his gun because he thought that if he entered the bar with the gun, he would probably scare his brother-in-law's aggressors and be able to remove his brother-in-law from the bar with safety.

As appellant was attempting to pick his brother-in-law up from the barroom floor, Guerra and Cantu advanced toward the appellant allegedly to take his gun away. Appellant started shooting when the two men were between three and five feet from him and killed Guerra and wounded Cantu.

An information was filed charging the defendant (appellant) with assault with intent to commit murder (Count I) and murder (Count II). On December 6, 1968, after a trial on both counts, a jury returned a verdict of guilty of murder in the first degree on Count I and guilty of assault with intent to commit murder on Count II. The court then discharged the jury. On December 11, 1968, 5 days later, the court recalled the jury for the purpose of correcting such verdicts. The jury retired without having been sworn and returned verdicts of guilty of assault with intent to commit murder on Count I and guilty of murder in the first degree on Count II.

Appellant assigns as errors numerous irregularities which occurred in the conduct

of the trial, viz., failure to swear the bailiff, permitting the jury to separate, returning a verdict without appellant's counsel being present and given an opportunity to poll the jury and recalling the jury after it had been discharged to correct the verdict. In addition appellant raises several evidentiary objections as well as objections to the court's refusal to give certain requested instructions. A murder charge with death as a possible penalty is the most serious charge that can be made and the conduct of the trial deserves the closest scrutiny to determine whether all the defendant's rights were protected and whether or not he received a fair trial. While any one of the errors in the conduct of the trial standing alone might not constitute grounds for reversal or for a new trial, it is our opinion that the cumulative effect requires the court to reverse and grant the defendant (appellant) a new trial. In addition there is at least one serious evidentiary error which requires reversal.

■ Appellant's first assignment of error concerns the failure to have the bailiff sworn. The statutory requirement [1] that the bailiff be sworn to keep the jury together in a murder trial was enacted to guarantee defendant a fair and impartial trial.

■ The record does not reflect that the bailiff was sworn prior to placing the jury in his custody. Whatever is essential in a criminal proceeding to deprive a person of his liberty must appear of record and nothing is taken by intendment or implication. Ball v. United States, 140 U.S. 118, 11 S.Ct. 761, 35 L.Ed. 377 (1891).

■ The mere claim that the oath was given is not sufficient to resolve the matter.[2]

"A record is constituted of proper and legitimate elements set down in their order; for it is certainly not the law that all the gossip a clerk or prothonotary writes down in his docket, ipso facto becomes the voice of undeniable truth. The judges of a court of error must determine for themselves, and consequently on facts, instead of sweeping assertions." Hamilton v. Commonwealth, 16 Pa. 129 at 133 (1851) as quoted by the United States Supreme Court in Ball v. United States, *supra.*

The Idaho statute speaks in mandatory terms and this court therefore holds that the record must affirmatively show that the bailiff was sworn. Whether this constitutes prejudicial error depends on the circumstances of the case and what was the jury's conduct during recess. This then brings us to appellant's next assignment of error

---

1. "19–2126. *Custody of jury during trial* —The jury sworn to try an indictment for any offense, except murder, may, at any time during the trial, before the submission of the cause, in the discretion of the court, be permitted to separate, or they may be kept together, in charge of a proper officer. In case the court orders the jury to be kept together the sheriff must provide a suitable place for the board and lodging of the jury, at the expense of the county and when first given custody of the jury the officer must be sworn to keep the jury together during each recess and adjournment during the trial; to suffer no person to speak to or communicate with them, or either of them, nor to do so himself, on any subject connected with the trial, and to return them into court as ordered by the court. In all trials for murder the jury must be kept together."

■

2. "The Court: Do you remember? Did you swear the Bailiff?
The Clerk: No, I don't recall and I don't have it in my minutes.
The Court: I was quite sure that she did. In fact, I was quite sure I could remember what she told him.
Mr. Reeves: It is our recollection from our notes that there was no swearing until the time of the final submission and may the record show that the Clerk indicates that she does not recall?
The Court: She says she don't remember.
Mr. Reeves: Does the Bailiff perhaps recall whether he was sworn?
The Court: Do you recall whether we had you sworn when we started?
The Bailiff: I don't remember whether I was or not. I thought I swore every time the rest did."

regarding the separation of the jury and their association with the State's witnesses. Where the defendant in a murder case shows the jury have separated after having been sworn to try the case, he has made a sufficient prima facie showing to entitle him to a new trial and to shift the burden onto the state of showing clearly and beyond reasonable doubt that nothing transpired during such separation or on account thereof that did or could prejudice the defendant in any of his rights. State v. Sly, 11 Idaho 110, 80 P. 1125 (1905). The record indicates that during a recess the jurors were joined for lunch by one of the State's witnesses and conversed with him. The court does not approve of this conduct, but realizes under certain circumstances, as where there is only one eating establishment in town, such contacts are practically unavoidable. In this case the evidence reveals that the conversation that transpired did not relate to any subject related to the trial. We therefore hold that the state met its burden and decide such contact was harmless.

In Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965) the United States Supreme Court considered a related problem and held that close and continuous association between key witnesses and the jury deprived the petitioner of the right to trial by an impartial jury which the Due Process Clause of the Fourteenth Amendment requires. However the court clearly emphasized the fact that, "We deal here not with a brief encounter, but a continuous and intimate association throughout a three-day trial." 379 U.S. 466 at 473, 85 S.Ct. 546 at 550 (1965).

We find a passage enunciated by this court in State v. Sly, *supra,* particularly applicable to the questions presented by appellant's first and second assignments of error.

"These slipshod methods are allowed to go on unrebuked and then on appeal this court is asked to overlook a multitude of violations of the statute in order to avoid the necessity of new trials." State v. Sly, *supra,* 11 Idaho, at 122, 80 P., at 1129.

■ Turning now to the question of whether or not the trial court erred in admitting evidence of appellant's failure to have secured a gun permit, it is our opinion that it was error to allow into evidence this testimony. Such evidence was completely irrelevant to the crime for which Rodriguez was on trial. The prosecution is not permitted to introduce evidence of other crimes in criminal prosecutions. State v. Blank, 33 Idaho 730, 197 P. 821 (1921). While there are certain well defined exceptions to this rule, the evidence here in question did not fall within one of them.

■ Appellant asserts that the court's refusal to allow him to read to the jury from material used on the stand by a witness to refresh his memory pursuant to § 9–1204 of the Idaho Code [3] constituted error. However the particular documents used to refresh the witness' memory was only one of several contained in a file. The entire file and all the documents contained therein were not subject to the scrutiny of the adverse party. State v. Braathen, 77 N.D. 309, 43 N.W.2d 202 (1950). The document which appellant desired to read to the jury was a F.B.I. report which the witness had not read on direct examination. Thus there was no error committed by the district court.

■ Appellant claims the court erred by refusing to give requested instruction No.

3. "9–1204. *Refreshment of memory.*—A witness is allowed to refresh his memory respecting a fact, by anything written by himself, or under his direction, at the time when the fact occurred, or immediately thereafter, or at any other time when the fact was fresh in his memory, and he knew that the same was correctly stated in the writing. But in such case the writing must be produced, and may be seen by the adverse party, who may, if he choose, cross-examine the witness upon it, and may read it to the jury. So also a witness may testify from such a writing, though he retain no recollection of the particular facts, but such evidence must be received with caution."

III.[4] This instruction is not a correct statement of the law of self-defense in a homicide case. It is based on I.C. §§ 19–202 and 19–203 which gives one the right to use resistance sufficient to prevent the offense. The law relevant to self-defense in a homicide case is I.C. § 18–4009.[5] Essentially this permits self-defense with a deadly weapon only where the accused has reasonable cause to believe, and does believe, he is in danger of great bodily injury or where the person being defended is in similar danger. State v. Wilson, 41 Idaho 616, 243 P. 359 (1925). Therefore the proposed instruction was incorrect since it did not include the statutory requirement of "great bodily injury" required by I.C. § 18–4009.

■■■■■ Appellant also assigns as error the refusal of the trial court to give instructions relating to the requisite mental state of the accused which is necessary for the jury to find in order to find that appellant acted in self-defense. It is appellant's contention that the jury was entitled to find the appellant's personal belief that his only effective resistance to prevent the offense against his brother-in-law was sufficient to permit him to act in self-defense.[6] With this contention we cannot agree. The appellant's fear alone is not a legally sufficient reason upon which to base an inference that appellant acted in self-defense. Accompanied by the appellant's perception of the situation, there must be in addition circumstances sufficient to excite the fears of a reasonable man. Thus an objective and not a subjective criterion must be applied when inquiring into the appellant's state of mind. State v. Scroggins, 91 Idaho 847 at 849, 433 P.2d 117 (1967).

■■■■■ Appellant also asserts as error the trial court's receiving the jury's verdict without defense counsel being present and the discharge of the jury without it being polled. It is not essential that defense counsel be present when receiving a verdict. 24 C.J.S. Criminal Law § 1450 (1961).

4. "You are instructed that resistance sufficient to prevent the offense may be made by a party about to be injured to prevent an offense against himself or some member of his family. If you find that defendant had tried to prevent injury to himself and his brother-in-law by talking to the assailants and asking them to stop fighting, and then by throwing bottles and a pool ball at the assailants and that such attempts failed, and the defendant reasonably thought that the only effective · resistance was with the gun, then you must find defendant not guilty."

5. "18–4009. *Justifiable homicide by any person.*—Homicide is also justifiable when committed by any person in either of the following cases:

1. When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; or,

2. When committed in defense of habitation, property or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or against one who manifestly intends and endeavors, in a violent, riotous or tumultuous manner, to enter the habitation of another for the purpose of offering violence to any person therein; or,

3. When committed in the lawful defense of such person, or of a wife or husband, parent, child, master, mistress or servant of such person, when there is reasonable ground to apprehend a design to commit a felony or to do some great bodily injury, and imminent danger of such design being accomplished; but such person, or the person in whose behalf the defense was made, if he was the assailant or engaged in mortal combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed; or,

4. When necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed, or in lawfully suppressing any riot, or in lawfully keeping and preserving the peace."

6. Defendant's requested instruction No. 9. "You are instructed that the Idaho law permits a man to defend any person from great bodily harm by another, and a man who defends such other person stands in that other person's shoes so far as his right of self-defense is concerned; therefore if you find that defendant fired the shots with the motive of defending Andy Lopez, and that Andy Lopez was then being threatened with death or great bodily harm, then you must find defendant not guilty."

This is particularly true when as in this case counsel was warned that if he was not available when the jury was ready to return its verdict that the court might proceed without him. However if a trial judge should elect to proceed without defense counsel being present, he has the duty to have the jury polled in order to assure that the defendant's rights were not violated. The right to poll the jury is a substantial legal right and to deny it without waiver is prejudicial error in a felony case. 21 Am.Jur.2d, Criminal Law, § 375 (1965); Annot. 49 A.L.R.2d 619, § 9 (1956); see also, Brooks v. Gladden, 226 Or. 191, 358 P.2d 1055 (1961), cert. den., 366 U.S. 974, 81 S.Ct. 1942, 6 L.Ed.2d 1263 (1961); Powell v. Commonwealth, (Ky.) 346 S.W.2d 731 (1961). It has been held also that it is a denial of a right so fundamental as to require retrial, though the trial was otherwise free from error and the jury's verdict fully warranted. Commonwealth v. Martin, 379 Pa. 587, 109 A.2d 325 (1954). In Brooks v. Gladden, *supra*, the Oregon Supreme Court reviews the various conflicting lines of authority but states that the great majority of states take the position that the defendant has the absolute right to such a poll. The state contends, however, that appellant waived his right because his counsel had returned to court after the jury was discharged but before they had left the courtroom. Again however the minutes of the court do not reflect that defendant's counsel was present when the verdict was returned and the jury was discharged. Since this is a substantial legal right waiver will not be presumed but must be affirmatively shown. Therefore this court finds that it was error for the court to proceed in receiving the jury's verdict in the absence of defense counsel without the jury being polled.

The next alleged error to consider was the act of the trial court in recalling the jury after a lapse of 5 days to correct its verdict and the court's failure to swear the jury. I.C. § 19–3702 states:

"19–3702. *Immaterial errors disregarded.*—Neither a departure from the form or mode prescribed by this code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice in respect to a substantial right."

Also this court is governed by I.C. § 19–2819,

"19–2819. *Judgment upon appeal—Technical errors disregarded.*—After hearing the appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

It is not apparent in this case how appellant was prejudiced or any substantial right of his infringed. It was impossible for the jury to find the defendant guilty of first degree murder of a person who is not killed. The mistaken verdict was undoubtedly a clerical mistake in nature and should have been corrected by the judge himself. Osborne v. State, 82 Nev. 342, 418 P.2d 812 (1966); State v. Carpenter, 92 Idaho 12, 435 P.2d 789 (1968). The procedure followed by the trial court was erroneous.

Appellant contends the trial court erred in allowing the state to cross-examine him regarding his previous criminal record. A defendant in a criminal action cannot be compelled to testify; however, if he takes the witness stand and testifies in his own behalf, he does subject himself to the rule that he may be cross-examined about any facts testified to on his direct examination or connected therewith. State v. Larkins, 5 Idaho 200, 47 P. 945 (1897). We have carefully examined that part of the record showing the cross-examination of Nicolas Rodriguez and are of the opinion that his entire cross-examination related to facts about which he testified in chief. I.C. § 9–1209 is not applicable to the case at bar since the wrongful acts which appellant claims were im-

properly discovered via the cross-examination lost their taint of impropriety during the direct examination of the appellant. Appellant testified on direct examination that he had been in "trouble" with the law prior to the present proceedings against him. The prosecution was entitled to inquire into the nature of this "trouble" since it was a fact directly related to appellant's testimony in chief.

Appellant also assigns as error the failure of the trial court to give instructions based on the appellant's right to bear arms. In light of the fact that this requested instruction was based on a collateral issue, which should not have been introduced into this case, viz., appellant's failure to obtain a gun permit, the need for such instruction has become obviated.

 Appellant contends the trial court erred by admitting evidence of his reputation when his reputation had not been placed in issue. However the record reveals that evidence of the defendant's good reputation had been attested to on defendant's behalf by the same witness whose testimony is now being attacked as inadmissible. "When the defendant has offered reputation evidence to show the unlikelihood he committed the crime charged, the state may show bad reputation on the character trait." Bells Handbook of Evidence for the Idaho Lawyer, page 140; accord, State v. Miller, 60 Idaho 79, 88 P.2d 526 (1939).

 We finally address ourselves to appellant's contention that the trial court erred in admitting into evidence bullets and a pistol without proper identification or connection. Appellant's contention is predicated upon the fact that there was no positive identification of the spent bullets or. the weapon. In the absence of positive identification, where there is sufficient circumstantial evidence to justify a reasonable inference that such articles may have been used by the accused, weapons and bullets are admissible for whatever probative value they may have. State v. Cofer, 73 Idaho 181, 249 P.2d 197 (1952); State v. Allison, 122 Mont. 120, 199 P.2d 279 (1948). In the case at bar, the evidence revealed that a gun was found by the defendant's sister-in-law in her back yard. An officer testified that the gun turned over to him by the sister-in-law was used in the shooting and was owned by the defendant. It is not a requirement of the law of evidence that the gun offered in evidence be positively identified as the weapon used in the perpetration of the crime. State v. Cofer, *supra*. The admission of such evidence is within the sound discretion of the trial court and any objection to the lack of positive identification goes to the weight of the evidence rather than to the admissibility of the article. State v. Allison, *supra*.

As stated previously, it is the totality of errors and irregularities which we have heretofore discussed upon which we base our decision in this case. Any one of the irregularities standing alone may not have been a sufficient ground to warrant the granting of a new trial. As to appellant's other assignments of error not dealt with in the opinion, it is unnecessary to discuss them since appellant has been granted a new trial for reasons heretofore discussed.

Judgment reversed and cause remanded for new trial.

McFADDEN, C. J., McQUADE and SHEPARD, JJ., and HAGAN, D. J., concur.