# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 50157

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | Filed: March 21, 2025 |
| Plaintiff-Respondent, | ) | |
| | ) | Melanie Gagnepain, Clerk |
| v. | ) | |
| | ) | THIS IS AN UNPUBLISHED |
| GREGORY ESCOBEDO, | ) | OPINION AND SHALL NOT |
| | ) | BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Randall S. Grove, District Judge.

Judgment of conviction for aggravated battery with an enhancement for use of a deadly weapon, unlawful possession of a firearm by a felon, grand theft, and being a persistent violator, affirmed.

Erik R. Lehtinen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant. Kierra Mai argued.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

TRIBE, Judge

Gregory Escobedo appeals from his judgment of conviction for aggravated battery with an enhancement for use of a deadly weapon, unlawful possession of a firearm by a felon, grand theft, and being a persistent violator. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Officers responded to a 911 call where a bystander reported that a man's vehicle was stolen from a gas station. The bystander drove the owner of the vehicle (E.N.) to look for the vehicle. E.N. and the bystander found the vehicle on the side of the road. E.N. approached the vehicle and confronted the driver (Escobedo). E.N. was then shot by Escobedo. Officers arrived and eventually found and arrested Escobedo. Escobedo was charged with aggravated battery with an

1

enhancement for use of a deadly weapon, unlawful possession of a firearm by a felon, grand theft, and being a persistent violator. Escobedo proceeded to a jury trial.

At trial, the State introduced a recording of Escobedo telling an officer, "I [f***ing] shot the guy." Escobedo made a motion to introduce evidence to provide context for that statement pursuant to Idaho Rule of Evidence 106. Escobedo sought to introduce a statement where he told the officer that Escobedo shot E.N. because Escobedo was scared and thought E.N. was in a cartel. The district court granted the motion, in part, and admitted the part of Escobedo's statement where he stated that he was scared. The district court denied the motion, in part, and excluded the part of Escobedo's statement where he provided the basis for his fear (the cartel). Escobedo also made a motion in limine seeking to exclude evidence as to the nature and extent of E.N.'s injuries pursuant to I.R.E. 403, based on a lack of relevance and unfair prejudice. The district court found that the nature and extent of E.N.'s injuries were relevant but that anything beyond that would be unfairly prejudicial. Finally, Escobedo objected to the surgeon providing medical testimony on the basis that it would be cumulative testimony of the bullet removal. The district court overruled that objection. Subsequently, Escobedo was found guilty of aggravated battery (Idaho Code § 18-907), with an enhancement for use of a deadly weapon (I.C. § 19-2520), unlawful possession of a firearm by a felon (I.C. § 18-3316(1)), grand theft (I.C. § 18-2403(4)), and being a persistent violator (I.C. § 19-2514). Escobedo appeals.

## II.

## STANDARD OF REVIEW

When reviewing the trial court's evidentiary rulings, this Court applies an abuse of discretion standard. *State v. Jones*, 160 Idaho 449, 450, 375 P.3d 279, 280 (2016). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

2

## III.

## ANALYSIS

First, Escobedo argues that the district court erred in denying his I.R.E. 106 motion which would have required the State to present certain statements surrounding his confession. Second, Escobedo argues that the district court erred by allowing the State to present evidence of E.N.'s injuries that was irrelevant, unduly prejudicial, and needlessly cumulative. Finally, Escobedo argues that, even if the errors are independently harmless, they amount to cumulative error.

### A.     Context Evidence

Escobedo made a motion to the district court pursuant to I.R.E. 106 which would have required the State to include Escobedo's statements that would explain why he shot E.N. Specifically, Escobedo argues the district court erred in finding that, for the statements to be admitted under I.R.E. 106, they would need to be submitted through a nonhearsay source. Escobedo argues that I.R.E. 106 requires certain statements to be admitted, regardless of whether they are considered hearsay. Escobedo argues that he was hindered from presenting "the context for his fear and correct the misimpression given by the State's truncated version of his statements to [law enforcement], and thereby, establish a basis for the jury to be instructed on self-defense."

Idaho Rule of Evidence 106 states: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time." The Idaho Supreme Court has interpreted this to mean "only additional material that is relevant to what has already been admitted" by the adverse party may be admitted under I.R.E. 106. *State v. Joy*, 155 Idaho 1, 14, 304 P.3d 276, 289 (2013).

The State sought to include a statement Escobedo made to an officer where Escobedo said, "I [f***ing] shot the guy." Escobedo argues that I.R.E. 106 allows this statement to be accompanied by another statement made by Escobedo in which he said, "because I thought [E.N.] was with the cartel." To support his argument, Escobedo highlights the State's acknowledgement at trial that I.R.E. 106 "can serve in certain instances as a hearsay exception if it is required to provide additional context to those statements."

At trial, Escobedo argued that I.R.E. 106 and 803(3) allowed for his statement regarding his fear to be admitted as a hearsay exception because the statement showed his then-existing

mental state. The district court held that statements of "motivation by fear to do the shooting" were admissible under I.R.E. 803(3) but that "anything that shows the basis for his fear" rather than "the expression of fear itself" did not fit within the hearsay exception and the district court declined to admit those statements. Further, the district court held that statements of "any expressions . . . of motivation by fear to do the shooting . . . would be appropriate to include. . . . Rule 106 may even require it in fairness." The district court found that any statement beyond that, including the statement, "I thought [E.N.] was with the cartel," was not admissible under either I.R.E. 106 or 803(3) and would have to be admitted through a nonhearsay source. These statements reflect that the district court applied both I.R.E. 106 and 803(3) in reaching its decision to admit or exclude Escobedo's statements. The district court clarified that the statements explaining the basis for Escobedo's fear would only be admitted under some other nonhearsay exception.

Escobedo acknowledges that I.R.E. 106 does not require the entire recording of his conversation with law enforcement be admitted. Rather, he argues that only the portions of the recording that "are needed in fairness to clarify those parts offered by the prosecutor" should be admitted. It appears that the only statement the district court did not allow pursuant to I.R.E. 106 and 803(3) is Escobedo's statement, "I thought [E.N.] was with the cartel." Escobedo failed to argue how this statement would provide more context to the statement, admitted by the State, where Escobedo said, "I [f***ing] shot the guy." Moreover, Escobedo fails to provide reason as to how his belief--that the man Escobedo shot was in the cartel--would provide any more context than the admitted statement regarding his mental state of being scared. The district court did not abuse its discretion in declining to admit the statement.

Further, Escobedo asserts that the failure to admit this statement prevented him from presenting a theory of self-defense and proposing a self-defense jury instruction. However, Escobedo fails to argue or even allege how this statement would constitute self-defense. At the close of evidence, Escobedo sought to instruct the jury on the theory of self-defense. The district court reviewed Idaho precedent and the self-defense jury instruction. The district court cited to *State v. Turner*, 136 Idaho 629, 634, 38 P.3d 1285, 1290 (Ct. App. 2001) and found that instructing the jury on self-defense requires "circumstances sufficient to excite the fears of a reasonable person." Additionally, the district court relied on *State v. Rodriguez*, 93 Idaho 286, 291, 460 P.2d

4

711, 716 (1969) which states, "the appellant's fear alone is not a legally sufficient reason upon which to base an inference that appellant acted in self-defense." The district court also noted that "nobody so far has testified that [E.N.] had a weapon, that any kind of weapons had been directed or brandished . . . before the shot was fired." While Escobedo does not challenge that finding on appeal, he argues that the exclusion of the statement, "I thought [E.N.] was in the cartel," forced Escobedo to surrender the ability to establish a basis for the jury to be instructed on self-defense.

However, Escobedo fails to explain how the inclusion of the statement, "I thought [E.N.] was in the cartel," would overcome the burden of showing that the force used by Escobedo was reasonable under the circumstances. The perceived or actual status of a person in the cartel does not automatically lend itself to a self-defense jury instruction without more that would excite the fears of a reasonable man.[1]

**B.  Injury Evidence**

Escobedo argues that the evidence as to the extent of E.N.'s injuries was not relevant, was cumulative, and was unduly prejudicial.

**1.  Relevance**

As a preliminary issue, the State argues that Escobedo is estopped from arguing the relevance of E.N.'s injuries on appeal because Escobedo invited the error and failed to preserve the issue for appeal. We disagree.

At trial and while arguing a motion in limine, Escobedo conceded that, because he was charged with using a gun (a deadly weapon), "anything that has to do with a bullet, a bullet wound, exit wounds, entry wounds are certainly relevant as far as medical information." Escobedo then argued that any evidence relating to the extent of E.N.'s injuries, his being close to death, the length of time he was on the surgical table, or the bullet's proximity to his heart was not relevant

---

[1]     Escobedo argues that his Fifth Amendment and due process rights were implicated by the district court's failure to admit the statement, "I thought [E.N.] was in the cartel," because excluding "exculpatory portions" of a confession while including inculpatory portions could force a defendant to waive his or her privilege against self-incrimination to "correct the misleading impression" given by the included portion of the confession. Escobedo argues that, in order to exercise his right to not testify, he was forced to give up the ability to provide context for his fear, correct misimpressions by the truncated version of the confession, and lay a basis for a self-defense instruction. However, since we hold that the district court's ruling excluding the statement was not in error, we need not address Escobedo's Fifth Amendment and due process argument.

5

because that evidence only proved the seriousness of the injury, not the use of a deadly weapon. Because Escobedo explicitly objected to the admission of certain facts and that objection was overruled, he did not invite any error as it related to the facts admitted over his objection.

For the same reason, we disagree with the State's assertion that Escobedo's argument on appeal "is far in excess of his argument to the district court" and was not preserved for appeal. The State argues that Escobedo conceded in the district court that "anything that has to do with a bullet, a bullet wound, exit wounds, entry wounds are certainly relevant as far as medical information goes, because that shows that a deadly weapon potentially was used in this case." The State contends that Escobedo's objection was to evidence "beyond that." On appeal, according to the State, Escobedo argues that E.N.'s "injuries [were] irrelevant," which is a much broader argument than what was made in the district court. As a result, only claims of error relating to testimony "beyond" the evidence set forth above is preserved for review. However, Escobedo argued to the district court that the extent of E.N.'s injuries was irrelevant but conceded the fact that bullet, exit wounds, and entry wounds were relevant. As a result, relevancy arguments are preserved.

Escobedo argues that the evidence relating to E.N.'s injuries was not relevant because the State's theory was not based on the injuries to E.N. but, rather, only the unlawful use of force or violence with a deadly weapon. In this way, Escobedo argues that the evidence of E.N.'s injuries does not make it a material fact to the State's theory. The State argues that the evidence of E.N.'s bullet wounds was relevant to show that Escobedo shot E.N.

Evidence that is relevant to a material and disputed issue concerning the crime charged is generally admissible. *State v. Garcia*, 166 Idaho 661, 670-71, 462 P.3d 1125, 1134-35 (2020). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *Garcia*, 166 Idaho at 670, 462 P.3d at 1134. Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010).

The evidence that Escobedo argues is irrelevant is the testimony that the bullet was near E.N.'s heart and that he almost died from being shot. Escobedo argues that "there is no requirement that a person suffer a particular set of injuries in order to 'get shot.'" While there is

6

no such requirement, the testimony and evidence associated with E.N.'s injuries from being shot make the fact of being shot more or less probable than it would be without the evidence. Escobedo compares this to *Garcia* where the Idaho Supreme Court held that evidence of a victim's virtues was not relevant to whether the victim of second degree murder was a human being. However, this comparison omits necessary context. In *Garcia*, the Court also held that a human being "may or may not be a kind person, help others, or take care of his spouse." *Garcia*, 166 Idaho at 673, 462 P.3d at 1137. However, the Court also held that certain "generic information about a victim may be relevant to establishing that a victim is more than a nameless, faceless statistic." *Id.* at 672, 462 P.3d at 1136. Effectively, the Court in *Garcia* held that the testimony regarding the victim's character as a human being was not relevant to whether the victim was a human being.

The facts in the instant case are distinct. The information, filed by the State, charged Escobedo with aggravated battery and alleged that he "did willfully and unlawfully use force or violence upon the person of [E.N.], against his will by means of a deadly weapon." The State had the burden of proving that not only did Escobedo shoot a gun, but also that E.N. was struck by the bullet that came from that gun. As opposed to the testimony of a person's character being so remotely tied to him or her being a human being, the evidence of injuries associated with a gunshot wound is not so remote to be irrelevant to the fact of whether a person was shot with a gun. The district court did not abuse its discretion in finding that the evidence of "the nature and extent of the injuries caused by the bullet" was relevant to the issues of force and violence.

Escobedo also argues that the district court "walked [its] decision back" by allowing the testimony concerning the "nature and extent of the injuries caused by the bullet" to be admitted. Escobedo acknowledges that the district court initially granted his motion in limine, in part, and denied his motion, in part, holding that the nature and extent of the injuries caused by the bullet were relevant "on the issues of force or violence" while noting that testimony beyond that such as "permanent injury, permanent disability, any kind of difficulty in recovery, potential loss of life, [and] things like that" were beyond the scope of what was charged. Escobedo asserts that the district court "walked [its] decision back" by allowing the testimony concerning the "nature and extent of the injuries caused by the bullet" to be admitted. Contrary to Escobedo's view that the district court "walked [its] decision back" regarding which testimony was relevant, the district court reiterated its original decision and acknowledged E.N. going into cardiac arrest fell within

7

the nature and extent of the injuries caused by the bullet. We cannot conclude that the testimony regarding E.N. going into cardiac arrest was clearly outside the district court's original ruling. We reach the same conclusion as to the surgeon's testimony that E.N.'s blood pressure dropped to zero in a manner that was not compatible with life. Therefore, the evidence permitted did not exceed the original decision by the district court.

### 2.    Unfair prejudice

Escobedo argues that the probative value of the evidence of the injuries was substantially outweighed by the danger of unfair prejudice to him. Escobedo also argues that the probative value of the evidence was substantially outweighed by the danger of presenting needlessly cumulative evidence. A trial court's determination under I.R.E. 403 will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Enno*, 119 Idaho 392, 406, 807 P.2d 610, 624 (1991); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct. App. 1989). Relevant evidence may be excluded if "its probative value is substantially outweighed by a danger of . . . unfair prejudice." I.R.E. 403. "In other words, evidence should be excluded if it invites inordinate appeal to lines of reasoning outside of the evidence or emotions which are irrelevant to the decision making process." *State v. Rhoades*, 119 Idaho 594, 604, 809 P.2d 455, 465 (1991).

This Court has concluded that evidence is not unfairly prejudicial when "it was not an unrelated act or circumstance, but instead was part and parcel of the crime for which [a person] was charged." *State v. Fordyce*, 151 Idaho 868, 870, 264 P.3d 975, 977 (Ct. App. 2011). In *Fordyce*, the State charged an individual, who attacked his live-in girlfriend, with felony domestic violence. *Id*. at 868-69, 264 P.3d at 975-76. Fordyce moved to exclude any evidence that, at the time of the attack, his girlfriend was pregnant. Fordyce claimed that this evidence would be unfairly prejudicial and lead a jury to believe the attack resulted in a miscarriage. *Id*. at 869-70, 264 P.3d at 976-77. The district court allowed the evidence to be presented without conducting a balancing test on the record to determine whether the probative value of the evidence was substantially outweighed by unfair prejudice. *Id*. at 869, 264 P.3d at 976. This Court concluded that, if the attack was the cause of the miscarriage, the evidence cannot be said to be unfairly prejudicial but rather was evidence of the "fact and force of the battery." *Id*. at 870, 264 P.3d at 977. Finally, this Court noted that the injury resulting from the attack, while it made Fordyce look like a bad person, did not rise to the level of unfair prejudice. *Id*.

8

The State argues that the evidence of the "direct and predictable damage caused by" the charged conduct is not unfairly prejudicial, and even if it was, such prejudice did not outweigh the probative value of the evidence. For the reasons stated above, the evidence was probative of the charged conduct. The district court held that "beyond the scope of what's charged . . . could potentially result in unfair prejudice to [Escobedo]." Therefore, the district court specified that the evidence would be limited to "the nature and extent of injuries caused by this projectile." Similar to *Fordyce*, the nature and extent of the injuries to E.N. was not an unrelated circumstance but was rather part of the crime of aggravated battery. Therefore, while the fact that E.N. nearly died or spent a significant amount of time on the operating table might make Escobedo look particularly bad, the facts cannot be said to be unfairly prejudicial.

Escobedo further argues that the district court erred in failing to revisit or revise its analysis of I.R.E. 403 as it applied to the testimony regarding E.N. going into cardiac arrest. Escobedo argues that the record does not indicate that the district court actually weighed the "new-found relevance against the recognized risk of undue prejudice." However, as previously addressed, the admission of the testimony of E.N. going into cardiac arrest is not in contradiction with the district court's original ruling. In its original ruling, the district court performed the I.R.E. 403 balancing test and found that the evidence of E.N.'s "permanent injury, permanent disability, any kind of difficulty in recovery, potential loss of life, [and] things like that" could have the potential to prejudice Escobedo. The district court allowed the evidence of E.N. going into cardiac arrest to come in as the district court found it to be "included in the nature and extent of the injuries caused by the bullet." Therefore, the original I.R.E. 403 balancing test was sufficient and applied to individual statements and testimony made during trial. It is not required that the district court perform the balancing test during the admission of every new piece of evidence. To the extent Escobedo argues that an additional I.R.E. 403 balancing test should have been performed, we decline to adopt a rule requiring such.

Escobedo argues that the surgeon's testimony regarding the extent of E.N.'s injuries was needlessly cumulative. Further, Escobedo argues that the district court erred in failing to conduct an analysis of whether the probative value substantially outweighed the prejudice from the cumulative testimony. Specifically, Escobedo argues that *State v. Ruiz*, 150 Idaho 469, 471, 248 P.3d 720, 722 (2010) stands for the proposition that it is reversible error for a district court to fail

to conduct a balancing test on the record. Even if we were to accept this interpretation of *Ruiz*, Escobedo has not shown reversible error because he has not shown any cumulative evidence creating unfair prejudice to weigh.

Escobedo argues that the surgeon's testimony was "further medical testimony" and "additional medical evidence" after the jury already heard from an officer who witnessed the surgery and collected the bullet after its extraction by the surgeon. According to Escobedo the surgeon's testimony was repetitive of the officer's testimony. Escobedo's argument rests, in part, on the State's assertion that the surgeon's testimony would corroborate what the officer "believed" she had witnessed during the removal of the bullet from E.N.'s body.

Contrary to Escobedo's portrayal of the arguments in the district court, the State did not argue that the surgeon would corroborate testimony that had already been presented by the officer but rather, that the surgeon would testify to "observing where the wound was, the nature of the wound, and where the bullet was taken from." In addition, the surgeon would serve as a chain of custody witness because the officer did not testify that she saw the bullet taken from E.N but rather that she viewed the surgery through a viewing window on the surgical floor. The officer testified that the bullet was removed from the "left side of [E.N.'s] heart" but provided no further statement regarding its removal or placement. Because we disagree with Escobedo's portrayal of the arguments in the district court, and he has presented no further arguments for the cumulative nature of the evidence, we cannot hold that the district court abused its discretion in allowing the surgeon to provide testimony.

## C.    Cumulative Error

Escobedo also contends that the cumulative error doctrine applies here, necessitating a vacation of his conviction. Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. *State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2012). However, a necessary predicate to the application of the doctrine is a finding of more than one error. *Id.* Escobedo has failed to demonstrate at least two errors, a necessary predicate to the application of the cumulative error doctrine. Because we find that the district court did not err in the above issues asserted by Escobedo, he has failed to establish the necessary factual predicate for application of the cumulative error doctrine.

10

## IV.

## CONCLUSION

Escobedo has failed to show the district court abused its discretion in declining to allow certain evidence to be presented pursuant to I.R.E. 106. Also, Escobedo has failed to show the district court abused its discretion by admitting evidence as to the nature and extent of E.N.'s injuries. Finally, because Escobedo has failed to show any error, we will not address the cumulative effect of any errors. Therefore, Escobedo's judgment of conviction for aggravated battery with an enhancement for use of a deadly weapon, unlawful possession of a firearm by a felon, grand theft, and being a persistent violator is affirmed.

Chief Judge GRATTON and Judge HUSKEY, **CONCUR**.

11